(Nos. 65487, 65678, 65679 cons.—Writs )

THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* RICHARD M. DALEY, State's Attorney of Cook County, Petitioner, v. HONORABLE DONALD E. JOYCE, Judge, *et al.*, Respondents.

*Opinion filed December 21, 1988.*

STAMOS, J., took no part.
CLARK, J., concurring.
MILLER, J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Terrence M. Madsen, Assistant Attorney General, of Chicago, and Thomas V. Gainer, Jr., Kevin Sweeney and Carol L. Gaines, Assistant State's Attorneys, of counsel), for petitioner.

Ralph Ruebner and Ira A. Moltz, both of Chicago, for respondent Samuel Ramirez.

Daniel J. Stohr, of Chicago, for respondent Ephrain Dominguez.

Patrick A. Tuite and Dennis M. Doherty, both of Chicago, for *amicus curiae* Illinois Attorneys for Criminal Justice.

JUSTICE RYAN delivered the opinion of the court:

We have consolidated in this original action a number of cases which were before the circuit court of Cook County. In each of these cases the State has filed in this court a petition for writ of *mandamus*, prohibition or supervisory order which requests this court to compel the Honorable Donald E. Joyce of the circuit court of Cook County to adhere to the provisions of section 115—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—1), as amended by Public Act 84—1428, effective July 1, 1987, and proceed to conduct jury trials for the defendants. This statute, entitled Method of Trial, provides:

> "§115—1. Method of Trial. All prosecutions except on a plea of guilty or guilty but mentally ill shall be tried by the court and a jury unless the defendant waives such jury trial in writing or, *in a criminal prosecution where the only offenses charged are felony violations of the Cannabis Control Act or the Illinois Controlled Substances Act, or both, the State and the defendant waive such jury trial in writing.*" (Emphasis added.) Ill. Rev. Stat., 1986 Supp., ch. 38, par. 115—1.

In each of these cases the defendant was indicted for a violation of the Illinois Controlled Substances Act. Prior to their trials, the defendants submitted written jury waivers to Judge Joyce. The People indicated they would not waive a trial by jury. Judge Joyce accepted the jury waivers from the defendants and denied the jury requests by the People. The petitions to this court, to compel Judge Joyce to expunge the orders wherein he accepted the defendants' jury waivers, followed.

There are numerous issues presented here involving the constitutionality of this statute. The defendants and the Illinois Attorneys for Criminal Justice, which filed an *amicus curiae* brief, argue in opposition to the State's petition for *mandamus* that this statute violates the State's constitutional guarantee of the right to trial by jury. They further contend that Federal and State constitutional guarantees of equal protection and due process are violated, and this statute, as applied to the defendants, is an *ex post facto* law. The State denies these assertions. Because we determine that this statute deprives the defendants of the full protection guaranteed under article I, section 13, of the 1970 Illinois Constitution, it is unnecessary to rule on the due process, equal protection and *ex post facto* issues which have also been raised.

We are dealing here with one of the most revered of all rights acquired by a people to protect themselves from the arbitrary use of power by the State. Our courts, when presented with a question involving jury waivers, have often undertaken extensive reviews of the history of trial by jury. (*Singer v. United States* (1965), 380 U.S. 24, 13 L. Ed. 2d 630, 85 S. Ct. 783; *Patton v. United States* (1929), 281 U.S. 276, 74 L. Ed. 854, 50 S. Ct. 253; *People v. Spegal* (1955), 5 Ill. 2d 211; *People v. Scornavache* (1931), 347 Ill. 403; *People ex rel. Swanson v. Fisher* (1930), 340 Ill. 250.) The courts often look to the common law, not only when determining this discrete issue of jury waiver (see, *e.g., Scornavache*, 347 Ill. at 408, citing *Bushell's Case* (K.B. 1670), 89 Eng. Rep. 2), but also when determining other essential functions of a jury. (See, *e.g., People v. Bruner* (1931), 343 Ill. 146, citing *The Seven Bishops' Case* (K.B. 1688), 87 Eng. Rep. 136, and *The King v. Dean of St. Asaph* (K.B. 1784), 3 T.R. 428.) When the constitutional guarantees, which we have as citizens, invoke common law princi-

ples, the courts look to the common law to help define their meaning. (*People v. Brewster* (1899), 183 Ill. 143, 150.) However, the courts also realize that blind adherence to the common law is inappropriate when the conditions that gave rise to common law rules no longer exist. *People ex rel. Swanson v. Fisher* (1930), 340 Ill. 250, 265.

As citizens, our rights to trial by jury are guaranteed by the Federal and State Constitutions. Under Federal constitutional analysis, a Federal Rule of Criminal Procedure, somewhat similar to the statute here, was upheld by the Supreme Court in *Singer v. United States* (1965), 380 U.S. 24, 13 L. Ed. 2d 630, 85 S. Ct. 783. While there are dissimilarities between our statute and Rule 23(a) of the Federal Rule of Criminal Procedure, it is clear that to require consent by the government to a jury waiver is permissible under Federal constitutional law.

This court's analysis, however, is not limited to Federal constitutional principles. If we find in the language of our constitution, or in the debates or committee reports of the constitutional convention, an indication that a provision of our constitution is intended to be construed differently than similar provisions of the Federal Constitution, then this court should not follow or be bound by the construction placed on the Federal constitutional provision. See *People v. Tisler* (1984), 103 Ill. 2d 226, 245.

Our 1970 State constitution, article I, section 13, provides that "[t]he right of trial by jury as heretofore enjoyed shall remain inviolate." (Ill. Const. 1970, art. I, §13.) Our State constitution of 1870 first employed the phrase "as heretofore enjoyed" when speaking of the inviolate right of trial by jury. (Ill. Const. 1870, art. II, §5.) Originally, the 1818 constitution, article VIII, section 6, read, "the right of the trial by jury shall remain invio-

late" (Ill. Const. 1818, art. VIII, §6), and the 1848 constitution, article XIII, section 6, in addition stated, "and shall extend to all cases at law, without regard to the amount in controversy" (Ill. Const. 1848, art. XIII, §6).

In addition to the provision in our constitution that the right to jury trial as heretofore enjoyed shall remain inviolate, there is also contained in article I, section 8, of our constitution language very similar to that contained in the sixth amendment of the Federal Constitution. Article I, section 8, provides that "[i]n criminal prosecutions, the accused shall have the right *** to have a speedy public trial by an impartial jury ***." (Ill. Const. 1970, art. I, §8.) Also enumerated in article I, section 8, as rights of the accused, are other rights that are listed in the sixth amendment of the Federal Constitution. Thus, in our State constitution, jury trial is referred to twice in the bill of rights: article I, section 8, and article I, section 13. In both references, trial by jury is a right guaranteed to the people, and not to the State.

In the Federal Constitution, however, only in the sixth amendment is trial by jury referred to as a right of the accused. In article III, section 2, of the Federal Constitution, trial by jury is also mentioned. It is provided in that section: "The trial of all Crimes, except in Cases of Impeachment, shall be by Jury ***." (U.S. Const., art. III, §2.) This provision is not contained in the Bill of Rights of the Federal Constitution, wherein certain rights are guaranteed to the people. This provision is, instead, contained in the article of the Federal Constitution which defines the judicial powers. Thus, as to the jury trial issue, there is a difference in the language of our State constitution from that of the Federal Constitution, and the difference is one of substance and not merely one of form. In view of this difference, *Singer v. United States* is not helpful in deciding the issue before us, and we should give our State constitutional provision

meaning independent of the construction the Federal courts have placed on the jury trial provisions of the Federal Constitution.

In giving the language of our constitution independent meaning, we must consider what the drafters of our present constitution intended to include in the right to trial by jury "as heretofore enjoyed." It is clear that the committees which reported to the constitutional convention delegates in 1970 recommended no change whatsoever in jury trials in criminal cases. (6 Record of Proceedings, Sixth Illinois Constitutional Convention 26 (hereinafter Proceedings).) The bulk of the debate on the convention floor concerned civil jury cases and whether our State would adopt some of the more innovative practices employed in other States—for example, six-person juries or majority, rather than unanimous, verdicts. (3 Proceedings 1427-32.) It is clear from the committee proposals, the floor debates, and the explanation to the voters that "[t]his section is the same as Article II, Section 5 of the 1870 Constitution, except that it deletes an outdated reference to the office of justice of the peace, which has been abolished" (7 Proceedings 2686), that there was no intent to change trial by jury as that right was enjoyed in this State at the time of the 1970 constitutional convention. In *People v. Lobb* (1959), 17 Ill. 2d 287, 298, we stated:

"Section 5 of article II of the Illinois constitution provides that 'The right of trial by jury as heretofore enjoyed, shall remain inviolate.' We have construed these words to mean the right of a trial by jury as it existed under the common law *and as enjoyed at the time of the adoption of the respective Illinois constitutions.*" (Emphasis added.)

Thus, it is the common law right to jury trial *as enjoyed at the time of the adoption of the 1970 constitution* to which "heretofore enjoyed" refers. There has been

significant debate in this State concerning the issue of a defendant's waiver of a jury after a plea of not guilty. Toward the end of the last century this court stated that a defendant's jury waiver in a felony trial was not permissible because a jury was essential for jurisdiction (*People v. Brewster* (1899), 183 Ill. 143, citing *People v. Harris* (1889), 128 Ill. 585), but it had long been held that a jury waiver was permissible in cases of misdemeanors (*Zarresseller v. People* (1855), 17 Ill. 101). These cases were construing our State constitutions in light of the common law. The United States Supreme Court, in *Patton v. United States* (1929), 281 U.S. 276, 74 L. Ed. 854, 50 S. Ct. 253, addressed jury waiver and the jurisdictional question in light of the Federal Constitution. The *Patton* Court also looked at a frequently advanced public policy reason employed in various Federal and State courts to give validity to the proposition that juries were a jurisdictional requirement. The proposition cited by Blackstone, Commentaries on the Laws of England vol. 4, at 189, was that the King has "an interest in the preservation of all his subjects." This proposition later became that the State and the public have an interest in the preservation of the liberties of citizens and will not allow them to be taken away. The *Patton* Court went on to review the converse of this public policy rationale. Thus, if a defendant could plead guilty and dispense with all the constitutional protections offered with a trial and yet have the court's jurisdiction remain intact, why would waiving just one aspect of the constitutional protection, trial by jury, destroy jurisdiction? Because of this reasoning and because it was clear the State could not force a defendant who pleaded guilty to trial, *Patton* held that a jury is not required for jurisdiction and a defendant may waive a jury with the government's consent.

Our court, in *People ex rel. Swanson v. Fisher* (1930), 340 Ill. 251, used similar reasoning when it considered the issues of jury waiver, our State constitution's bill of rights, and jurisdiction. This court noted that each of our State constitutions spoke of a defendant's *right* to trial by jury. Because the constitution conferred a right, it did not mean the right to be mandatory or peremptory, but a privilege of the accused. (340 Ill. at 257.) The court further stated that if the effect of our State's bill of rights was to make juries indispensable to the court's jurisdiction, then juries would have been indispensable to misdemeanor cases and could not be waived. This had not been the law in Illinois. Therefore, under State constitutional analysis and without reference to any State statute, this court held that a defendant has the power to waive a jury trial in a felony prosecution. It also overruled *People v. Brewster* (1899), 183 Ill. 143, *People v. Harris* (1889), 128 Ill. 585, and other State cases not in conformity with the holdings in *Fisher*.

One year later, the issue of jury waiver was again before our court in *People v. Scornavache* (1931), 347 Ill. 403. The State there had objected to the defendant's jury waiver, a factual circumstance not present in the *Fisher* case. A sharply divided court, after conducting its analysis of the common law and other States' positions, held:

> "There is, in the absence of statute, no good reason for holding that a right to waive a jury trial means a right to deprive the prosecution of it. If by reason of the nature of the crime, or the publicity of it, or for any sufficient reason, it appears that the judge is, or the people of the county are, prejudiced against the accused he has a right to a change of venue. *There is, of course, nothing in the constitution conferring the right of jury trial on the State*, but such has for centuries been the established mode of trial in criminal cases. The maintenance of a jury as a fact-finding body occupies that place in government,

as we know it in America, which, in the absence of a statute so providing, requires that such trial be not set aside merely on the choice of the accused." (Emphasis added.) (*People v. Scornavache* (1931), 347 Ill. 403, 415.)

Thereafter, our State legislature enacted a statute which provided that in any case where the defendant pleads guilty or waives a jury, the cause shall be heard and determined by the court without a jury. (See 1941 Ill. Laws 574; Ill. Rev. Stat. 1953, ch. 38, par. 736.) Our court, in *People v. Scott* (1943), 383 Ill. 122, held if this statute were mandatory, it violated Illinois constitutional separation of powers principles.

In 1955, the definitive ruling on the issue of a defendant's constitutional right to a jury trial and waiver of a jury came in *People v. Spegal* (1955), 5 Ill. 2d 211. This court overruled *People v. Scott* (1943), 383 Ill. 122, and *People v. Scornavache* (1931), 347 Ill. 403. In *Spegal*, this court reaffirmed the reasoning and holding of *People v. Fisher* and incorporated into the *Spegal* opinion, with approval, large sections of the dissent that Justice DeYoung had written in *People v. Scornavache*. In *Spegal*, the court noted that the right to trial by jury may be waived as any other constitutional provision for the protection of the accused. (*Spegal*, 5 Ill. 2d at 216.) In *Spegal*, it was noted that *People v. Scornavache* was not decided on constitutional grounds, and there was nothing in the 1870 constitution that conferred a right to a jury trial on the State, which fact the majority in *Scornavache* had acknowledged. The court further stated concerning our State bill of rights, again quoting Justice DeYoung's dissent, " 'The framers of the constitution were intent upon preserving these rights for the protection of the individual and they declared them in unequivocal language unhampered by any condition or requirement in the interest of the State.' " (5 Ill. 2d at 217-18, quoting *Scornavache*, 347 Ill. at 418 (DeYoung, J., dis-

senting).) The court further stated, again quoting from the dissent in *Scornavache*, " 'to declare, as the majority does, that the prosecution's consent is necessary to make such a waiver effective is inconsistent with the defendant's acknowledged power, enables the State to nullify his act and reduces his power to waive a jury trial to a shadow.' " (5 Ill. 2d at 218, quoting *Scornavache*, 347 Ill. at 418-19 (DeYoung, J., dissenting).) When the Supreme Court decided *Singer v. United States* (1965), 380 U.S. 24, 13 L. Ed. 2d 630, 85 S. Ct. 783, and held the requirement of prosecutorial consent was permissible under the Federal rule, it specifically noted that Illinois saw the waiver of a jury as a personal right and cited *Spegal* and the 1964 Illinois statute. 380 U.S. at 37, 13 L. Ed. 2d at 639, 85 S. Ct. at 491.

The holding in *People v. Spegal* (1955), 5 Ill. 2d 211, was therefore the law in Illinois when the constitutional convention began in 1969. The floor debates during our 1970 constitutional convention make it clear there was no intent to alter the right to trial by jury as it existed at the time the constitution was adopted. That right was an amalgam of the common law, preceding State constitutions and rulings from this court. The State here has argued that it has a constitutional right to a jury trial. This simply turns the concept of our bill of rights on its head. The State has also argued that the language of the Illinois constitutional right to a trial by jury "as heretofore enjoyed" refers only to the right as it existed in the common law. As we have already mentioned, many of our cases have traced the development of the common law jury. They cite Blackstone, Justice Storey, and common law cases primarily for the proposition that the jury was seen by Englishmen and colonists alike as a great privilege and liberty they had acquired to protect themselves from tyranny, first from the King and later from his government. (*Patton v. United States* (1929), 281

U.S. 276, 74 L. Ed. 854, 50 S. Ct. 253; *People v. Spegal*
(1955), 5 Ill. 2d 211; *People v. Scornavache* (1931), 347
Ill. 403; *People ex rel. Swanson v. Fisher* (1930), 340 Ill.
250.) From Magna Carta to our revolution, there were
five centuries of common law development. Magna Carta
was not the only "treaty" between the King and the
people. Another was the 1689 Bill of Rights (1 W. & M.,
sess. 2, ch. 2), which asserted many principles we find in
the first 10 *amendments to the Federal Constitution*.
This English revolution of 1689 occurred in part because
of the oppressive use by the King of prerogative and ec-
clesiastical courts and his appointment of common law
judges who threatened, intimidated and imprisoned
juries in order to reach decisions favorable to the crown.
(See generally J. Kenyon, The Stuart Constitution
1603—1688 (1966); D. Keir, The Constitutional History
of Modern Britain since 1485 (9th ed. 1969); Three Brit-
ish Revolutions, 1641, 1688, 1776 (Pocock ed. 1980); E.
Williams, The Eighteenth-Century Constitution, 1688—
1815 (1960).) There is no question that a century later
the British government's use of admiralty courts, which
sat without juries to enforce Parliament's trade acts,
helped to produce our revolution in 1776.

When we speak of jury rights as they existed in the
common law, we are encompassing more than a concept
of 12 people unanimously deciding issues of fact. We are
speaking also of centuries of struggle where Englishmen
and colonists asserted an ancient liberty to protect them-
selves from the arbitrary power of the State. *People ex
rel. Swanson v. Fisher* (1930), 340 Ill. 250, citing 2 J.
Story, Commentaries on the Constitution of the United
States §1779.

If we say that our constitutional provisions retaining
the right to jury trial "as heretofore enjoyed" refers
only to the right to jury trial as it existed at common
law, to what stage of the common law development of

trial by jury do we refer? As noted above, "as heretofore enjoyed" was first inserted into the constitution of this State in 1870. The right to jury trial had been provided for in the constitution of 1848, the constitution of 1818, and in the Ordinance for the Government of the Territory of the United States Northwest of the Ohio River (Ill. Ann. Stat., Const., Illinois Organic Acts, Ordinance of 1787, art. II, at 338 (Smith-Hurd 1971)). At the time of the insertion of "as heretofore enjoyed," it would seem logical to believe that the drafters of the 1870 constitution, by that insertion, referred to the nearly 100 years of trial by jury experience that the people of this State and territory had enjoyed, and the colonial experience before that, instead of jumping back into the vague and uncertain jury trial practices developed by the common law. In construing jury trial provisions of the Federal Constitution, it may be appropriate to explore their common law underpinnings. It hardly seems necessary to do so to give meaning to the distinctive provision "as heretofore enjoyed" inserted into our 1870 constitution, and retained in our present constitution.

In *People v. Spegal* (1955), 5 Ill. 2d 211, this court settled with finality the issue of an accused's right to waive a jury under our 1870 constitution. That case held, again quoting from the dissent in *Scornavache*:

" 'The requirement of the prosecution's consent to the defendant's waiver of a jury trial is sought to be justified in the opinion on the ground that the "thing guaranteed" to the defendant "is not the right to waive a jury trial but the right to have such a trial." Before there can be the power to waive a jury trial, the right to such a trial must exist. The framers of the constitution were concerned with the essential right out of which the power to waive would arise. They took cognizance of the existence of an accused person's right to a jury trial and they safeguarded that right by giving it a

constitutional order and dignity. The power to waive follows the existence of the right, and there is no necessity of guaranteeing the right to waive a jury trial.' " (5 Ill. 2d at 218, quoting *Scornavache,* 347 Ill. at 419 (De-Young, J., dissenting).)

The State asserts that *Spegal* is based on statutory law and not on constitutional law principles. In *Scornavache,* the majority held that an accused, by waiving the right to jury trial, could not deprive the prosecution of a jury trial. In response to this holding, the legislature authorized an accused to waive trial by jury. In *Spegal,* this court, of necessity, explored the constitutional basis for the *Scornavache* holding, and found it wanting.

The State today has once again advanced the argument that the right to a jury trial does not encompass the right to waive it. The dimension of our constitutionally protected right to a trial by jury under the 1870 constitution is clear under the *Fisher* and *Spegal* analyses, and clearly encompassed the right of an accused to waive trial by jury. That right, as it was understood and enjoyed by the people of this State ("heretofore enjoyed"), was adopted and incorporated in our 1970 constitution. Short of a constitutional amendment to that effect, the legislature cannot now deprive an accused in Illinois of any part of that constitutionally protected right. The statute entitled Method of Trial (Ill. Rev. Stat., 1986 Supp., ch. 38, par. 115—1 (effective July 1, 1987)) therefore violates article I, section 13, of the 1970 Illinois Constitution and is invalid. The prayer of the petition for a writ of *mandamus,* prohibition or supervisory order is denied.

*Writs denied.*

JUSTICE STAMOS took no part in the consideration or decision of this case.

JUSTICE CLARK, concurring:

While I agree with the result reached by the majority opinion, much of the majority's reasoning strikes me as unconvincing, and most of it as unnecessary. That reasoning flows from the majority's continued adherence to an untenable premise: that State constitutional provisions are to be construed in "lockstep" (see McAffee, *The Illinois Bill of Rights and Our Independent Legal Tradition: A Critique of the Illinois Lockstep Doctrine*, 12 S. Ill. U. L.J. 1 (1987)) with parallel provisions of the Federal Constitution.

It remains a mystery to me how this principle ever came into being, and why once in existence it has remained embedded, seemingly indelible, in the body of our law. I know of no evidence—either in the convention debates, the explanations given to the ratifying voters, or in the committee reports—for the proposition that our Illinois Constitution of 1970 was intended to be construed in some instances not by the supreme court of Illinois but, instead, by the Supreme Court of the United States. If, indeed, this was what was meant, why was it not said? It would have been easy enough for the drafters of the constitution to insert a proviso: "Where similar, State and Federal constitutional provisions are to be construed following the Federal precedents established by the United States Supreme Court." The lack of such a statement in the plain text of the constitution strongly suggests that the lockstep principle is not good constitutional law.

That the majority itself is uneasy with the lockstep principle can be seen from the qualifier which it attaches to it: a similar State provision can be interpreted differently if such an intent can be derived either from the language of the provision, the convention debates, or the committee reports. Thus the majority has blocked out a

multistep procedure. First, it must determine whether the State and Federal provisions are "similar." If not, the State provision can be interpreted independently. Second, if the provisions are "similar" it must be presumed that construction of the Federal provision controls. This is the lockstep principle. Third, the lockstep principle can be rebutted with evidence that the State provision is intended to be construed "differently"—*i.e.*, more broadly. Fourth, the State provision must be construed to determine its meaning in the context of the case presented.

This procedure strikes me as cumbersome. How it works in practice can be seen from the majority opinion. The majority infers from the words "heretofore enjoyed" that the ratifiers of the 1970 constitution did not intend to tamper with the right to jury trial guaranteed in prior State constitutions and under the common law. Since our court held in *People v. Spegal* (1955), 5 Ill. 2d 211, that a requirement of prosecutorial consent to jury waivers was unconstitutional, it would follow that the jury trial right "heretofore enjoyed" precluded prosecutorial consent. But does it follow? If the lockstep principle applies to the 1870 constitution, *Spegal* would be overruled by the Supreme Court's subsequent decision in *Singer v. United States* (1965), 380 U.S. 24, 13 L. Ed. 2d 630, 85 S. Ct. 783, which held that the Federal right to jury trial did not proscribe prosecutorial waivers. Thus the majority must argue that the jury trial right of the *1870* Illinois Constitution is to be interpreted differently than the parallel jury right guaranteed by the sixth amendment to the United States Constitution. But why so? Lacking direct evidence from convention debates or committee reports, the majority is forced to rely on unspecified differences between the "jury experience" of our forebearers in the eighteenth and nineteenth centu-

ries and the earlier common law traditions relied upon by the court in *Singer*.

I cannot help but admire the majority's reasoning. The almost Talmudic ingenuity with which the majority construes the words "heretofore enjoyed" is especially impressive. But my admiration is tempered by my sense that these verbal gymnastics are not needed.

The lockstep approach may have some advantages, but simplicity is not one of them. Nor is it clear to me why the majority's logic would not apply equally well to other constitutional guarantees such as privacy or search and seizure. As to many of our State constitutional provisions—indeed as to most of them—our court has a long tradition of liberal construction in the service of individual rights. The lockstep approach conflicts with this tradition. Nor has the approach won plaudits from scholars. To the contrary, it has been soundly condemned. See McAffee, *The Illinois Bill of Rights and Our Independent Legal Tradition: A Critique of the Illinois Lockstep Doctrine*, 12 S. Ill. U. L.J. 1 (1987); Note, *Interpreting the Illinois Constitution: Illinois Supreme Court Plays Follow the Leader*, 18 Loy. U. Chi. L.J. 1271 (1987).

There is an alternative. Instead of assuming that similar State and Federal provisions are to be construed similarly, we could simply assume that *all* State constitutional provisions are to be construed *independently* of their Federal counterparts. By "independently" I do not mean that the State constitutional provision must in every instance be given a broader or more liberal construction. All I mean is that as to our State constitutional provisions, Federal precedents are not *stare decisis*. They are persuasive and not determinative. Where their reasoning persuades us, we should follow them. Where they do not, we should not. Thus, in this instance, we need only hold that the reasoning of *Spegal* strikes us as more persuasive than the reasoning of

*Singer.* Strip away the circumlocution made necessary by its adherence to the lockstep principle, and that is what, it seems to me, the majority is really saying.

Using this approach, Federal precedent would be one guide to decision; our prior precedents, the records of our convention, and precedents interpreting similar provisions in the constitutions of our sister States would be others. Subject to the caveat that we could not interpret our State constitution in a way which would offend the Federal constitution, we would be free to make our own reasoned judgments on our State constitution without first having to decide whether the ratifiers of that constitution intended to accord us that privilege.

Several other considerations persuade me that the approach I suggest is the better one. Given the existence of the Federal Bill of Rights, and the application, through the due process clause of the fourteenth amendment, of the bulk of its guarantees to the States, there would be little point in writing parallel guarantees into any State constitution if those guarantees were never to be interpreted more broadly. I cannot understand why anyone would want to spill ink uselessly. By including parallel guarantees in our State constitution, its drafters and ratifiers were, it seems to me, sending a clear message. The message was that they wanted the "double protection" that only State constitutional guarantees could provide. They did not want our State constitution interpreted more broadly in every instance. But they at least wanted the security of knowing that the seven justices of this court would bring to bear on every important constitutional issue their independent resources of wisdom, judgment, and experience. It is precisely because I value these resources so highly that I cannot adhere to the majority's reasoning.

While I therefore cannot agree with the majority's reasoning, I applaud the result. This case, combined with

others, indicates to me that the lockstep principle is on its last legs. The court has now held that our State constitutional protection provides broader rights of due process (*Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, 159), free speech (*City of Blue Island v. Kozul* (1942), 379 Ill. 511), jury trial and confrontation (*People v. Duncan* (1988), 124 Ill. 2d 400), and freedom from cruel and unusual punishment (*People v. Gacho* (1988), 122 Ill. 2d 221, 260). It is also possible that it provides a greater protection for the right against self-incrimination. (*People v. Smith* (1982), 93 Ill. 2d 179, 189.) The only clear line of authority remaining which favors a lockstep construction involves search and seizure. See, *e.g.*, *People v. Tisler* (1984), 103 Ill. 2d 226; but see Note, *United States v. Leon & Illinois v. Gates: A Call for State Courts to Develop State Constitutional Law*, 1987 U. Ill. L. Rev. 331.

This crescendo of recent cases suggests that while the majority may pay lip service to the principle, it has tacitly repudiated it. I believe that is time to square case law and doctrine by making this repudiation explicit. Since the majority opinion, while correct as to its result, does not do this, I must respectfully concur.

JUSTICE MILLER, dissenting:

I cannot accept the majority's conclusion that the provision in the Illinois Constitution that guarantees to an accused the right to a jury trial also guarantees to an accused the unconditional right to demand a bench trial. For that reason I must dissent from the court's holding that the statute that requires the prosecutor's consent to a defendant's jury waiver in a variety of criminal cases is unconstitutional.

The Illinois Constitution contains two separate provisions that guarantee the right of an accused to a jury trial. Article I, section 8, of the constitution, applicable

only to criminal proceedings, parallels the sixth amendment of the United States Constitution and provides, among other things, that "the accused shall have the right *** to have a speedy and public trial by an impartial jury." (Ill. Const. 1970, art. I, §8.) Our three earlier constitutions contained similar provisions. (See Ill. Const. 1870, art. II, §9; Ill. Const. 1848, art. XIII, §9; Ill. Const. 1818, art. VIII, §9.) A second jury trial guarantee appears in article I, section 13, of the constitution. Applicable to both civil and criminal proceedings, article I, section 13, states, "The right of trial by jury as heretofore enjoyed shall remain inviolate." (Ill. Const. 1970, art. I, §13.) Similar provisions were found in our previous constitutions. (See Ill. Const. 1870, art. II, §5; Ill. Const. 1848, art. XIII, §6; Ill. Const. 1818, art. VIII, §6.) Although neither jury trial guarantee purports to grant to an accused the right to waive a jury trial and demand a bench trial, the majority would derive a constitutional mandate to that effect from the language of article I, section 13, and from case law touching upon the corresponding provision of the 1870 constitution.

The majority acknowledges that a different rule prevails in the Federal courts. In *Singer v. United States* (1965), 380 U.S. 24, 13 L. Ed. 2d 630, 85 S. Ct. 783, the Supreme Court unanimously upheld the validity of Rule 23(a) of the Federal Rules of Criminal Procedure, which requires that a defendant's waiver of a jury in a Federal prosecution be approved by both the court and the government. Reviewing the historical antecedents of our Federal constitutional right to trial by jury, the Court noted that the waiver of jury trials was virtually unknown at English common law until early in the nineteenth century. The American colonial experience provided some evidence that the colonists believed that it was possible to try a criminal defendant without a jury, but there did not appear to be a general recognition of a

defendant's right to waive a jury and be tried by the court alone. Finally, earlier Federal cases interpreting the jury trial guarantee had indicated that there was no absolute right to demand a bench trial. *Singer* held:

> "In light of the Constitution's emphasis on jury trial, we find it difficult to understand how the petitioner can submit the bald proposition that to compel a defendant in a criminal case to undergo a jury trial against his will is contrary to his right to a fair trial or to due process. A defendant's only constitutional right concerning the method of trial is to an impartial trial by jury. We find no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury—the very thing that the Constitution guarantees him." 380 U.S. at 36, 13 L. Ed. 2d at 638, 85 S. Ct. at 790.

The majority, however, believes that a different result must obtain under Illinois law. As the majority recounts, *People ex rel. Swanson v. Fisher* (1930), 340 Ill. 250, recognized that a jury waiver by a defendant in a criminal case does not deny the trial court jurisdiction over the proceedings. In *People v. Scornavache* (1931), 347 Ill. 403, a divided court ruled, on grounds of public policy, that a prosecutor may effectively veto an accused's waiver and insist that the case be tried before a jury. In 1941 the legislature enacted a statute that empowered an accused alone to waive a jury trial. In *People v. Scott* (1943), 383 Ill. 122, the court declared the 1941 statute unconstitutional, ruling that the provision encroached on the authority granted to the judicial system by article VI, section 1, of the constitution (Ill. Const. 1870, art. VI, §1). In *People v. Spegal* (1955), 5 Ill. 2d 211, the court overruled *Scott*, holding that the 1941 jury waiver statute, declared invalid in *Scott* but not repealed in the meantime, was not an unconstitutional encroachment on

the powers of the judiciary. (5 Ill. 2d at 220-21.) *Spegal* also noted that the legislature, in enacting the jury waiver statute, had rejected the *Scornavache* court's view of public policy and thus had "removed the only basis upon which the prevailing opinion in the *Scornavache* case rested." *Spegal* therefore overruled *Scornavache* as well. 5 Ill. 2d at 222.

It would appear, from the text of the jury trial guarantee of article I, section 13, of the Illinois Constitution, and from the prior decisions of this court, that there is no basis for the majority's conclusion that an accused enjoys a constitutional right to demand a bench trial, in addition to his right to demand a jury trial. As the decision in *Spegal* demonstrates, this court has previously given effect to the legislature's expressions of public policy on the subject of jury waivers. The majority opinion in this case, however, thwarts the public policy expressed in the instant statute and now finds in our constitution an overriding principle that bars further action by the legislature.

The majority asserts, as one of two grounds for its holding in this case, that *Spegal* "settled with finality the issue of an accused's right to waive a jury under our 1870 constitution." (126 Ill. 2d at 221.) That conclusion appears to rest on *Spegal*'s quotation of a passage from the dissenting opinion in *Scornavache*:

 " 'The requirement of the prosecution's consent to the defendant's waiver of a jury trial is sought to be justified in the opinion on the ground that the "thing guaranteed" to the defendant "is not the right to waive a jury trial but the right to have such a trial." Before there can be the power to waive a jury trial, the right to such a trial must exist. The framers of the constitution were concerned with the essential right out of which the power to waive would arise. They took cognizance of the existence of an accused person's right to a jury trial and they safeguarded that right by giving it a constitutional order and

dignity. The power to waive follows the existence of the right, and there is no necessity of guaranteeing the right to waive a jury trial.' " (*Spegal*, 5 Ill. 2d at 218, quoting *Scornavache*, 347 Ill. at 419 (DeYoung, J., dissenting).)

The majority apparently interprets that statement as suggesting that the constitutional guarantee of the right to a jury trial carries with it an implicit guarantee of the right to waive a jury. Under that view, the jury trial provision in the constitution serves double duty, granting not only the right to a jury trial but also the opposite right to demand a bench trial.

The same contention was rejected in *Singer v. United States* (1965), 380 U.S. 24, 13 L. Ed. 2d 630, 85 S. Ct. 783. There the Court said:

> "The ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right. For example, although a defendant can, under some circumstances, waive his constitutional right to a public trial, he has no absolute right to compel a private trial [citation]; although he can waive his right to be tried in the State and district where the crime was committed, he cannot in all cases compel transfer of the case to another district [citations]; and although he can waive his right to be confronted by the witnesses against him, it has never been seriously suggested that he can thereby compel the Government to try the case by stipulation." (380 U.S. at 34-35, 13 L. Ed. 2d at 638, 85 S. Ct. at 790.)

*Singer*'s reasoning is not restricted to the Federal Constitution and is equally applicable here. The right to demand a jury trial, guaranteed by the Illinois Constitution, does not entail an additional right to demand a bench trial. There is nothing in the language of the jury trial right, standing alone, that also guarantees the opposite right.

Moreover, I do not agree with the majority that the material from the *Scornavache* dissent quoted in *Spegal*

represents the holding of *Spegal*. The majority's interpretation of *Spegal* cannot be reconciled with the remainder of the opinion in that case, in which the *Spegal* court clearly indicated its view that the 1941 statute that granted to an accused the right to waive a jury trial was not an unconstitutional encroachment on judicial authority. Discussing the holding in *Scott* as well as other decisions pertaining to the powers of the judiciary, *Spegal* said:

> "None of these cases, however, goes so far as to assert an inherent power in the judiciary to override the choice of the parties in determining whether a particular case is to be tried by a jury or by the court, or to override the determination of the legislature as to the method of trial to be employed where a jury trial is not required by the constitution." 5 Ill. 2d at 220.

Later in *Spegal* the court made clear that it viewed as dispositive the 1941 statute that had been declared unconstitutional in *Scott*. (5 Ill. 2d at 221-22.) If the *Spegal* court believed that an accused had a constitutional right to demand a bench trial, then *Spegal*'s resurrection of the 1941 law granting that right as a statutory matter was completely unnecessary. For these reasons, I do not agree with the majority—or with the concurring opinion, which makes a similar claim (126 Ill. 2d at 224-25 (Clark, J., concurring))—that *Spegal* recognized a right under the Illinois Constitution to waive a jury trial and demand a bench trial.

The general jury trial guarantee contained in article I, section 13, of the Illinois Constitution provides, "The right of trial by jury as heretofore enjoyed shall remain inviolate." As a separate basis for its holding in this case, the majority contends that the phrase "as heretofore enjoyed" was intended to capture within the jury trial right all aspects of that right that were in existence in 1970, when the current constitution was adopted. (126

Ill. 2d at 215-21.) Under the majority's analysis, all existing features of the jury trial right, including those established by case law or statute, were engrafted onto the jury trial right as guaranteed by the 1970 constitution.

The majority's sweeping view finds no support, however, in either the constitutional text or the records of the proceedings of the constitutional convention. Apart from the deletion of an outmoded reference to civil trials before justices of the peace, article I, section 13, of our current constitution is identical with the corresponding provision in the previous constitution (see Ill. Const. 1870, art. II, §5). The Bill of Rights Committee proposed to retain, unchanged, the general jury trial guarantee provided by the 1870 State constitution, with the exception of the deletion of a reference to trials before justices of the peace. (See 6 Record of Proceedings, Sixth Illinois Constitutional Convention 26-28.) Proposals were made to allow the use of nonunanimous verdicts and of juries with fewer than 12 members in civil and criminal cases, but those ideas were not adopted, and the language appearing in the current constitution is the same as that proposed by the Bill of Rights Committee. There is no reason to conclude, as the majority does, that the retention of the language "as heretofore enjoyed" in the current constitution's description of the general jury trial right was intended to "constitutionalize" all existing judicial and statutory law pertaining to the right. Indeed, it has been noted that "[t]he term 'as heretofore enjoyed' is unquestionably ambiguous" (Ill. Ann. Stat., Ill. Const. 1970, art. I, §13, Constitutional Commentary, at 566 (Smith-Hurd 1971)), and the majority is unable to muster any evidence that the phrase was designed to specifically adopt the holding of a particular case or the provisions of a specific statute. I am not prepared to accept the majority's argument that the phrase "as heretofore enjoyed" was intended to work a wholesale incorpo-

ration of the case law and statutory law in effect when the current constitution was adopted, in the absence of a definite statement to that effect in the constitutional text or in the records of the constitutional convention.

Even if the phrase "as heretofore enjoyed" in article I, section 13, of our constitution operated in the way claimed for it by the majority, the provision would not support the conclusion reached here. As I have indicated, *Spegal* rested on grounds entirely different from those asserted in the majority opinion and does not stand for the principle that an accused enjoys, under the Illinois Constitution, the right to compel a bench trial. And I do not believe that it can be seriously argued that the 1970 convention delegates intended to incorporate into the jury trial guarantee the provisions of the 1941 jury waiver statute. Had the delegates wanted to grant that right, they could have included a provision guaranteeing to an accused not only the right to a jury trial but also a right to demand a bench trial. The drafters of the constitution did not include such a provision, however. *Cf. Singer v. United States* (1965), 380 U.S. 24, 31, 13 L. Ed. 2d 630, 635, 85 S. Ct. 783, 788 (if the colonists had recognized an absolute right to demand bench trials, "it would be difficult to understand why Article III and the Sixth Amendment were not drafted in terms which recognized an option").

Nothing in our constitution, in the proceedings of the convention at which it was drafted, or in the prior decisions of this court supports the majority's conclusion that the constitutional guarantee of a right to a jury trial also includes a right to demand a bench trial. I would hold that the statutory requirement of prosecutorial consent to an accused's waiver of his jury trial right does not violate the jury trial guarantees of the Illinois Constitution. The majority's result in this case presents an interesting anomaly. Defendants tried in Federal courts

in Illinois may not, pursuant to Federal practice, waive a jury trial without the consent of both the prosecutor and the trial judge. Despite the similarities between the Federal and State jury trial guarantees, defendants in criminal proceedings in State courts in Illinois may, under today's decision, "call the shots" and compel a bench trial without the consent of the prosecutor, even though the legislature has expressed a contrary view. That result is unwarranted, unwise, and constitutionally unsupportable, and therefore I dissent.