THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICK McGEE, Defendant-Appellant.

First District (4th Division)   No. 1—89—0905

Opinion filed March 21, 1991.

Mary Ellen Dienes, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Walter P. Hehner, and John Guinn, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant, Rick McGee, was convicted of possessing more than 30 grams of a controlled substance with intent to deliver (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)) following a jury trial in the circuit court of Cook County. Defendant was sentenced to the penitentiary for a term of 10 years.

Defendant appeals, contending the trial judge: (1) refused to permit defendant to be represented by retained counsel of defendant's choice, and also denied defendant's right to a bench trial; (2) erred in admitting improper rebuttal evidence and other irrelevant evidence; and (3) based the sentence on additional improper testimony.

We affirm the judgment of the trial court in part, vacate in part, and remand.

BACKGROUND

The record contains the following pertinent facts. On April 24, 1986, Detective Patrick Darcy swore out a search warrant for 831 South Dwyer Avenue, apartment B, in Arlington Heights. At approximately 10 p.m., Darcy and Detectives George Graham, Michael Bobko, and other Chicago and Arlington Heights police officers executed the warrant. When they arrived at the building, they noticed a gray Chevrolet Corvette in the parking lot.

Detective Darcy and the other officers positioned themselves at the front, back, and patio doors of the apartment. Darcy knocked on the front door and received no response. He knocked a second time. Lucretia Meo asked who was there. Darcy announced his office, stated that he had a search warrant, and directed Meo to open the door. The officers heard Meo run away from the door and shout, "It's the police."

Darcy forced the door open and the police entered the apartment. They observed defendant, wearing a bathrobe, run out of an office and into a bedroom. Darcy followed defendant and ordered him to halt. The officers asked defendant his name, and he responded "Rick." The officers led defendant and Meo to the living room, where they gave defendant and Meo a copy of the search warrant and advised them of their rights.

The police found .10 grams of cocaine in an unfolded paper packet in the bedroom. In the office, they found 8.48 grams of cocaine in an unfolded paper packet lying on a desktop. A further search of the office yielded a plastic container containing 106.53 grams of cocaine. The police also found various drug paraphernalia. Karen Garst, a police laboratory chemist, subsequently performed a field test that identified the substance as cocaine. The cocaine weighed a total of approximately 115 grams and had a street value of approximately $60,000.

The officers found cash totalling $810 on top of a bedroom dresser and $594 in a dresser drawer. Meo claimed the $810 and defendant claimed the $594. The police found documents that belonged to Meo and found no documents bearing defendant's name.

The police allowed defendant and Meo to dress prior to leaving the apartment. While defendant was dressing, Darcy searched defendant's pants and found several keys attached to a key ring. Darcy asked defendant if he owned an automobile. Defendant answered that he had a gray Chevrolet Corvette, the car was parked in the lot, its key was attached to the key ring, and that the officers could search the car. The police did so and did not find any contraband. One of defendant's keys fit the apartment's back door lock. When Meo and defendant left the apartment to be taken to the police station, Meo locked the back door with one of her keys.

At the police station, defendant told the police that he "was staying" with Meo, whom he described as his girlfriend. However, he stated that his "legal residence" was at an address on Oconto Avenue in Chicago, where his ex-wife lived. When asked for his telephone number, defendant gave the number listed to Meo at the Dwyer address. Although the arrest report lists as defendant's residence the

Oconto address, another police report lists as his residence both the Dwyer and Oconto addresses separated by a slash mark.

On December 31, 1986, defendant and Meo were jointly charged by information with possessing more than 30 grams of a controlled substance, *i.e.*, cocaine, with intent to deliver. Defendant moved for severance because Meo's defense would be that defendant brought the cocaine into the apartment without her knowledge. Defendant's motion was granted, and he and Meo were tried separately. A jury acquitted Meo. However, defendant's trial ended with a hung jury, which the trial judge discharged. Meo was represented by Ralph Meczyk, and defendant was represented by Richard Stopka.

On November 16, 1988, Lawrence Hyman moved to substitute as counsel for defendant. At a hearing on the motion, the State expressed concern whether Hyman's representation of defendant would create a conflict of interest. Hyman assured the trial judge that no such conflict would arise. Although Hyman shared offices with Meczyk, they had no formal business relationship. Hyman even speculated that he and Meczyk could represent defendant as co-counsel. However, the trial judge noted that Meo might testify at defendant's trial. Thus, the trial judge reasoned, Meo's appearance would raise a severe conflict of interest in Meczyk's representation of defendant. Hyman reassured the trial judge that Meczyk would not represent defendant.

Additionally, Hyman appeared at Meo's trial and testified on her behalf as a character witness. However, defendant stated at the hearing that he knew of Hyman's testimony. In response to the trial judge's questions, defendant stated that he wanted Hyman to represent him.

On November 21, 1988, the trial court held a hearing to review the status of defendant's upcoming trial. The State reiterated its concern over Hyman representing defendant after testifying as a character witness on behalf of Meo. Again, in response to the trial judge's questions, defendant stated that he wanted Hyman to represent him. Hyman then asked the court if Meczyk could sit with him and defendant at defense counsel's table. The trial judge denied the request. He again stated that because Meczyk represented Meo, Meczyk should not be involved in defendant's trial in any fashion.

On November 28, 1988, immediately prior to trial, Hyman presented a motion *in limine* to prohibit any reference to defendant's automobile, the Chevrolet Corvette. The court denied the motion. The trial judge deemed it highly probative that defendant gave to police officers a key ring that had attached thereto keys to the car and also a key that fit the apartment's back door lock. Thus, the court would

permit testimony that police officers observed the automobile in the parking lot and that it was registered to defendant. However, the trial judge prohibited the State's witnesses from testifying that the presence of the automobile indicated that defendant was in the apartment or that the police sought the car.

Hyman again requested the court to allow Meczyk to sit at defense counsel's table and assist by taking notes. The trial judge allowed Meczyk to take notes, but not at defense counsel's table and not in any official capacity. Hyman informed the court that defendant signed a waiver of conflict of interest arising from Meczyk's representation. The trial judge stated that he was not only concerned with defendant's rights, but with those of Meo as well. Hyman then tendered defendant's signed waiver of conflict of interest arising from Hyman's representation of defendant. Defendant was present at this hearing. The trial judge again asked defendant whether he waived any conflict of interest regarding Hyman. Defendant responded that he did.

At trial, Detectives Darcy, Bobko, and Graham, and police laboratory chemist Garst testified in the State's case in chief. In addition to the above-stated pertinent facts, Detective Bobko testified that defendant did not disclose that he lived in an apartment at 2829 West Fullerton Avenue in Chicago. The State rested.

Catherine McGee, defendant's ex-wife, testified in pertinent part that their family lived at 3637 North Oconto Avenue. The couple established a trucking business and a property management company. They bought the Fullerton building and other properties prior to their divorce. As part of the divorce, Catherine received the trucking business and the family domicile, while defendant received the management company and other properties. The Oconto address remained defendant's purported "legal address," although he rarely occupied it. Also, Catherine continued to work with defendant in the trucking business. It was their custom to carry large amounts of cash in the course of business.

Defendant testified on his own behalf. He testified essentially that he lived at the Fullerton Avenue address. He only occasionally occupied the Oconto Avenue address, but considered it his "legal address"; his driver's license listed the Oconto Avenue address, where he also received his mail. He never lived at, kept clothes at, or possessed a key to Meo's apartment. He did not possess narcotics with the intent to deliver them.

Defendant began to date Meo in March 1985. However, by 1986, he dated Meo only one to three times per week. Defendant testified

essentially that on April 24, 1986, he drove to Meo's apartment in his Chevrolet Corvette. Defendant was lying on the bed watching television. Police officers crashed into the apartment unannounced. Defendant jumped up and stood in the bedroom doorway. Police officers aimed guns at him and threatened him. He raised his arms and stood motionless. He did not go into the apartment's office area that night.

Police officers took every item defendant carried in his pants pockets, including cash totalling $594 and his car keys. He gave the officers permission to search his car. At the police station, defendant never told Detective Bobko that he lived with Meo, or gave as his address that of Meo's apartment. He never saw the cocaine and paraphernalia in Meo's apartment prior to that night. The defense rested.

Muriel Otto testified for the State in rebuttal. Otto testified that she was a neighbor of Meo; further, she was acquainted with Meo and came to know defendant. Between January and April 1986, she saw defendant at Meo's apartment "on a daily basis." She additionally saw defendant enter the building alone through a door that locked automatically upon closing. On cross-examination, however, Otto testified that she did not see defendant everyday. In surrebuttal, defendant testified that he did not visit Meo daily at the time of his arrest.

The jury convicted defendant as charged. At the sentencing hearing, the trial judge denied defendant's post-trial motion.

Over defense counsel's objection, the trial judge heard testimony of defendant's subsequent arrest for again possessing cocaine. Detective Graham testified that on November 26, 1986, he suspected defendant of possessing illegal drugs based on information from an anonymous source. He went to defendant's Fullerton Avenue apartment to investigate. In response to Graham's request and after being advised of his rights, defendant gave Graham permission to search the apartment. Graham did so and did not find any contraband. Graham then asked defendant for permission to search the basement of one of defendant's buildings, located at 1555 North St. Louis Avenue. After being advised of his rights, defendant gave permission and signed a consent form. They went to the St. Louis Avenue building. Graham forced open the basement and searched it. He found 441 grams of cocaine. Defendant was arrested, tried, and acquitted. Defendant presented two witnesses in mitigation.

At the close of the hearing, the trial judge found that the facts of the case, and Graham's testimony on the subsequent arrest, called for a prison term in excess of the statutory minimum sentence. However, noting defendant's potential for rehabilitation and his dependents, the trial judge did not consider a substantial sentence to be necessary.

The court sentenced defendant to a prison term of 10 years. Defendant appeals.

OPINION

I

Defendant makes two claims pertaining to the pretrial proceedings. He contends the trial judge: (A) refused to permit him to be represented by retained counsel of his choice, and (B) denied his right to a bench trial.

A

Defendant argues that the trial court erred by not allowing Meczyk, defendant's retained counsel of choice, to represent him. A criminal defendant's constitutional right to assistance of counsel includes the right to be represented by counsel of his choice. However, a defendant may be held to have exercised that right by his acquiescence in appearing counsel's conduct and statements, as well as the defendant's express affirmation that the attorney is his chosen counsel. "In other words, the defendant's appearance with and treatment of a private attorney as his retained counsel ordinarily is deemed to constitute a ratification of defendant's employment of that attorney and the exercise of his right to counsel of his choice." *People v. Smalley* (1988), 178 Ill. App. 3d 314, 318, 533 N.E.2d 428, 431 (and cases cited therein).

Applying these principles to the case at bar, it is clear that defendant chose Hyman to be his retained counsel. The record shows that the trial judge questioned defendant on his choice of counsel on three separate occasions prior to trial. Defendant responded each time that he wanted Hyman to represent him. If defendant wanted to retain Meczyk as counsel, he had ample opportunity to notify the trial court. Defendant refers us to his signed waiver of any conflict of interest arising from Meczyk's representation. However, defendant also signed at the same time a waiver of any conflict of interest arising from Hyman's representation. Since defendant received Hyman's representation, we hold that he was not denied his right to retained counsel of his choice.

B

Defendant also contends that the trial judge denied his right to a bench trial. Defendant posits that the State "apparently" demanded a jury for his first trial, pursuant to section 115—1 of the

Code of Criminal Procedure of 1963 (see Ill. Rev. Stat. 1987, ch. 38, par. 115—1). Defendant further states that at his second trial, he did not waive his right to a jury because it would have been a meaningless act; the statute required a jury if the State so requested. Defendant notes that our supreme court declared section 115—1 unconstitutional in *People ex rel. Daley v. Joyce* (1988), 126 Ill. 2d 209, 533 N.E.2d 873. Thus, defendant contends, he was denied his right to a bench trial.

We initially note that defendant misstates the record. At his first trial, it was *defendant* who demanded a jury and not the State. Further, at his second trial, defendant did not waive his right to a jury and the State did not demand one. These facts notwithstanding, defendant nevertheless argues that "there is no independent factual account to resolve this question" and "suggests that a remand is required to resolve this issue." This argument completely lacks merit. The record does not contain a jury demand by the State at either the first or second trial. However, the record does contain *defendant's* jury demand for his first trial. These facts are sufficient to resolve the issue.

II

Defendant next makes two evidentiary claims. He contends the trial judge erred in admitting: (A) improper rebuttal evidence, and (B) other irrelevant evidence. We note at the outset that the admission of evidence is within the sound discretion of the trial court, and its ruling should not be reversed absent a showing that the court exceeded its discretion. *People v. Ward* (1984), 101 Ill. 2d 443, 455-56, 463 N.E.2d 696, 702.

A

■ Defendant contends that the trial judge erred by allowing Muriel Otto to testify in rebuttal for the State. Rebuttal evidence is evidence that explains, repels, contradicts, or disproves evidence produced by a defendant. Rebuttal evidence may only be used to contradict the defendant's testimony as to a material issue and not to a collateral or immaterial issue. *People v. Williams* (1981), 96 Ill. App. 3d 958, 964, 422 N.E.2d 199, 204.

Defendant notes that Otto testified that she saw defendant at Meo's apartment daily for several months immediately prior to his arrest. Defendant further notes that the State offered Otto's testimony to rebut defendant's testimony that he visited Meo only approximately one to three times per week. Defendant argues that Otto's testimony

went to an immaterial issue because defendant admitted visiting Meo at least once per week.

■■ We disagree. Otto's testimony contradicted that of defendant on the frequency of defendant's visits to Meo's apartment. Of course, this went to the material issue of defendant's control over the premises, which is an element of the offense. (See *People v. Pintos* (1988), 172 Ill. App. 3d 1096, 1103-04, 527 N.E.2d 312, 316-17; *People v. Burke* (1985), 136 Ill. App. 3d 593, 599-600, 483 N.E.2d 674, 679.) The admission of Otto's rebuttal testimony was well within the discretion of the trial court. See *People v. Johnson* (1973), 11 Ill. App. 3d 745, 297 N.E.2d 683.

## B

Defendant contends that the trial judge erred by admitting into evidence testimony that defendant drove a Chevrolet Corvette. Defendant argues that the evidence is irrelevant because no connection existed between the crime charged and the type of automobile defendant drove.

■■■ The general test for the admissibility of evidence is its relevance. Evidence is admissible where it fairly tends to prove the particular offense charged. Any circumstances that tend to make the proposition more or less probable may be put into evidence. Evidence is therefore relevant where the fact or circumstance offered tends to prove or disprove a disputed fact or to render the matter at issue more or less probable. Relevance can also be established by means of inference. *People v. Jones* (1982), 108 Ill. App. 3d 880, 884-85, 439 N.E.2d 1011, 1015-16.

■■ In the instant case, the trial judge allowed testimony that police officers observed the automobile in Meo's parking lot and that it was registered to defendant. The court considered the car's ownership to be probative because defendant's key ring had attached thereto keys to the car and a key to the apartment's back door lot. During oral argument before this court, defense counsel conceded that the car's ownership had probative value. Further, the probative value of this evidence outweighed any prejudicial effect. To prevent undue prejudice, the trial judge prohibited any testimony that the presence of the automobile indicated that defendant was in the apartment or that the police sought the car. We cannot say that the trial court exceeded its discretion in admitting this evidence.

## III

Defendant claims that the trial judge erred in allowing Detective

Graham to testify in aggravation at the sentencing hearing. Detective Graham described the events leading to a subsequent arrest for drug possession. The record shows that the trial court based the sentence in part on Graham's testimony. Defendant argues that Graham's testimony, which we earlier described in detail, was irrelevant and untrustworthy. Defendant asks us to vacate the sentence and remand the cause to the trial court for a new sentencing hearing.

The State relies on cases such as *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344, in which our supreme court held as follows:

"Whether a defendant had been prosecuted and convicted for other misconduct, proof of which is offered at a sentencing hearing, is not, in our judgment, controlling as to its admissibility. More important are the questions of relevancy and accuracy of the information submitted. *** While trial judges should be cautious in admitting such proof and sensitive to the possibilities of prejudice to defendant if inaccurate information is considered, we believe that a trial judge may, under circumstances such as those here, properly receive proof of criminal conduct for which no prosecution and conviction ensued." 88 Ill. 2d at 498-99, 431 N.E.2d at 351-52.

This court, however, in *People v. Dean* (1987), 156 Ill. App. 3d 344, 509 N.E.2d 618, held that a new sentencing hearing was required where a trial judge, in sentencing a defendant, expressly relied on evidence of a pending charge, of which the defendant was subsequently acquitted. (156 Ill. App. 3d at 355, 509 N.E.2d at 624-25.) The facts in the case at bar fall squarely within our holding in *Dean*. We acknowledge that the Appellate Court for the Second District has expressly rejected *Dean* for this point. (*People v. Jackson* (1990), 200 Ill. App. 3d 92, 557 N.E.2d 1287.) Based on *Dean*, we vacate defendant's sentence and remand the cause to the trial court for a new sentencing hearing.

For the foregoing reasons, defendant's conviction of possessing more than 30 grams of a controlled substance with intent to deliver is affirmed, his sentence is vacated, and the cause remanded for a new sentencing hearing.

Affirmed in part; vacated in part and remanded.

JOHNSON and McMORROW, JJ., concur.