(No. 70699.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. RALPH FOSTER JACKSON, Appellant.

*Opinion filed July 30, 1992.—Rehearing denied October 5, 1992.*

542

CLARK, J., joined by BILANDIC and FREEMAN, JJ., specially concurring.

Frederic R. Klein, of Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., and Shirley M. Lukitsch and Helen T. Wilson, of Schiff, Hardin & Waite, of Chicago, for appellant.

Roland W. Burris, Attorney General, of Springfield, and James E. Ryan, State's Attorney, of Wheaton (Terence M. Madsen, Assistant Attorney General, of Chicago, and Barbara A. Preiner, Assistant State's Attorney, of counsel), for the People.

CHIEF JUSTICE MILLER delivered the opinion of the court:

On March 20, 1981, the defendant, Jackson, was convicted in the circuit court of Du Page County of the rape (Ill. Rev. Stat. 1979, ch. 38, par. 11—1), deviate sexual assault (Ill. Rev. Stat. 1979, ch. 38, par. 11—3), and robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—1) of Mary W. In July 1988, Jackson filed a petition for post-conviction relief challenging several aspects of his sentencing. The trial judge denied relief, and the appellate court affirmed (200 Ill. App. 3d 92). We granted leave to appeal (134 Ill. 2d R. 315), and now affirm the decisions of the circuit and appellate courts.

## Facts

The incident which led to Jackson's conviction took place on December 2, 1980, at the Fox Valley Shopping Center. Mary W. was grabbed in the parking lot and dragged down a nearby stairwell. Her assailant forced her to perform oral sex on him, then raped and robbed her. Mary W. identified Jackson as her assailant, and the jury found him guilty.

Jackson's sentencing hearing was held on May 1, 1981. The State presented as witnesses Ruth Luthringer, Jackson's former landlord, and Betty K., who claimed Jackson had raped her. Luthringer testified that she visited Jackson at his apartment on November 1, 1980, to collect his rent. A dispute over back rent ensued and Luthringer testified that Jackson

grabbed her, started shaking her, and threw her to the floor. Jackson then jerked her up and pushed her toward the door as she was screaming for help. She went out the door and the police arrived soon after.

Betty K. testified that in June of 1979 she was Jackson's neighbor and was negotiating with him to buy a used car from the dealership where he was employed. On June 27, 1979, Betty K. was about to drive to work when Jackson asked for a ride so he could go jogging. When Betty K. stopped to let Jackson out of the car, he walked around the car to the driver's side and asked to drive. Jackson drove to a secluded spot. He then told Betty K. to take her clothes off and threatened to rip them off. She tried to run but Jackson caught her and put his arm around her throat. Jackson then forced her to perform oral sex on him and raped her. When driving back to the apartments, Jackson threatened to have her killed or cause trouble for her if she went to the police. Betty K. went home, washed, changed clothes, then went to work, but did not stay. She went to the hospital and later reported the incident to the police.

Next to testify was Philip Moore, a corrections officer at the Du Page County jail. Moore testified that on January 30, 1981, while Jackson was in jail after being arrested for the rape of Mary W., Moore served on Jackson an arrest warrant and indictment for the rape and deviate sexual assault of Betty K. Moore said that when he started reading the indictment to Jackson, Jackson asked whom he had supposedly raped. Moore told Jackson that the name on the indictment was Betty K. According to Moore, Jackson replied: "I raped her, but that was a long time ago. How can they charge me with it now?"

Finally, Jackson testified on his own behalf. Jackson denied attacking Luthringer when she came to collect

the rent and claimed that she stabbed him with a letter opener. Jackson also denied raping Betty K., and denied making any statement to Philip Moore about raping Betty K.

Jackson's counsel cross-examined the State's witnesses, and in summation argued for leniency while pointing out Jackson's lack of a criminal record. Counsel did not, however, present any mitigation witnesses other than Jackson himself. Jackson's parents were in the courtroom during the sentencing hearing and were available to testify. Jackson's high school principal and another acquaintance also would have been willing to testify.

At the close of the proceedings, the trial judge commented that he had no doubt that Jackson had committed the rape for which he was convicted and that Jackson had "committed a sexual assault and a rape on [Betty K.]" The judge noted that Jackson had shown no remorse and concluded that he was "a very serious threat to the community," despite his lack of a criminal record. Accordingly, the trial judge sentenced Jackson to the maximum terms of 30 years for rape, 30 years for deviate sexual assault, and seven years for robbery, the sentences to run concurrently.

Jackson was tried on the Betty K. charges in July 1981, but the proceedings ended in a mistrial because of a hung jury. Jackson was retried in April 1982 using a procedure agreed upon by counsel in which a new trial judge, Judge Black, heard no evidence, but read the transcripts of the jury trial and the previous sentencing hearing. After reviewing the transcripts without hearing witnesses, the judge concluded that the State had failed to prove Jackson's guilt beyond a reasonable doubt and acquitted Jackson on the Betty K. charges.

Jackson filed a petition for post-conviction relief on July 13, 1988. The petition alleged that Jackson was entitled to a new sentencing hearing on the Mary W. conviction (1) because the trial judge had taken the Betty K. charges into consideration at sentencing and he was later acquitted of those charges; and (2) because of his trial counsel's failure to present mitigation witnesses at sentencing. The separate question of whether or not the sentences were excessive was not raised in the post-conviction petition.

Judge Bowman, the same judge who presided over Jackson's trial and sentencing on the Mary W. charges, heard the petition for post-conviction relief. While hearing arguments on Jackson's petition, Judge Bowman was candid about the effect Betty K.'s testimony had on the sentence. He stated, "[There was] no doubt that that evidence had a profound effect on what sentence he [Jackson] got. I would say probably no way would he have gotten 30 years without hearing testimony from [Betty K.] and I will state that on the record." Nevertheless, Judge Bowman denied relief on defendant's post-conviction petition. The judge concluded that there was no due process violation because another judge's determination that the State did not prove Jackson guilty beyond a reasonable doubt had no effect on his determinations at sentencing where the required burden of proof is less than beyond a reasonable doubt. Judge Bowman also concluded that Jackson was not deprived of effective assistance of counsel during the sentencing hearing.

The appellate court affirmed the denial of the post-conviction petition (200 Ill. App. 3d 92). In doing so, the court expressly refused to follow the First District's ruling in *People v. Dean* (1st Dist. 1987), 156 Ill. App. 3d 344, which was later reaffirmed in that district in *People v. McGee* (1st Dist. 1991), 211 Ill. App.

3d 641. This court granted Jackson's petition for leave to appeal (134 Ill. 2d R. 315).

The defendant, Jackson, argues here that he is entitled to a new sentencing hearing because he was acquitted of charges that were considered in his original sentencing hearing, and that he was denied due process because the trial judge erroneously assumed he was guilty of the Betty K. charges when he was sentenced. In addition, Jackson argues that he was deprived of effective assistance of counsel because his trial counsel failed to introduce mitigating evidence at his sentencing hearing.

The State replies that Jackson is not entitled to a new sentencing hearing and denies that the trial judge made any erroneous assumptions about Jackson's criminal record. The State also argues that Jackson was not denied effective representation because the decision not to present mitigation witnesses was a tactical decision, and that the potential mitigation witnesses would not have made a difference in the sentence.

## Discussion

We first turn to Jackson's arguments that he is entitled to a new sentencing hearing because of his acquittal on the Betty K. charges. Essentially, we are asked to decide whether due process (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2) requires resentencing after a defendant has been acquitted on charges that were considered when that defendant was sentenced for an earlier conviction.

It is clear that there are differences between the evidentiary standards required in the guilt-innocence phase of trial and those used in sentencing. For example, in *People v. Adkins* (1968), 41 Ill. 2d 297, this court held that the rigid rules of evidence applicable

during trial are not required at sentencing. In *Adkins*, the court observed:

> " 'A sentencing judge *** is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.' " (*Adkins*, 41 Ill. 2d at 300, quoting *Williams v. New York* (1949), 337 U.S. 241, 247, 93 L. Ed. 1337, 1342, 69 S. Ct. 1079, 1083.)

Unlike in the guilt-innocence phase of trial, a sentencing court may:

> " 'search anywhere, within reasonable bounds, for other facts which tend to aggravate or mitigate the offense. In doing so it may inquire into the general moral character of the offender, his mentality, his habits, his social environments, his abnormal or subnormal tendencies, his age, his natural inclination or aversion to commit crime, the stimuli which motivate his conduct, and *** the judge should know something of the life, family, occupation and record of the person about to be sentenced.' " *Adkins*, 41 Ill. 2d at 301, quoting *People v. McWilliams* (1932), 348 Ill. 333, 336.

While evidence of past criminal conduct is often not admissible at trial, it is relevant information at sentencing. Previous convictions are routinely considered. In addition, outstanding indictments or other criminal conduct for which there has been no prosecution or conviction may be considered in sentencing. Such evidence, however, should be presented by witnesses who can be confronted and cross-examined, rather than by hearsay allegations in the presentence report, and the defendant should have an opportunity to rebut the testimony. *People v. La Pointe* (1981), 88 Ill. 2d 482, 498-99; *People v. Jones* (1976), 36 Ill. App. 3d 491, 494.

The discretion of trial judges in hearing evidence and determining appropriate sentences is broad, but there are limits to this discretion. This court has said that a trial court "must exercise care to insure the accuracy of information considered and to shield itself from what might be the prejudicial effect of improper materials." (*Adkins*, 41 Ill. 2d at 300, citing *People v. Crews* (1967), 38 Ill. 2d 331, 337.) Additionally, while this court has not prescribed any specific traditional burden of proof at sentencing, the court has consistently stated that relevance and reliability are the important factors in the consideration of evidence at sentencing. (See, *e.g.*, *People v. Richardson* (1988), 123 Ill. 2d 322, 361; *People v. Johnson* (1986), 114 Ill. 2d 170, 205; *People v. Perez* (1985), 108 Ill. 2d 70, 88; *People v. Brisbon* (1985), 106 Ill. 2d 342, 364; see also *People v. Meeks* (1980), 81 Ill. 2d 524, 535; *La Pointe*, 88 Ill. 2d at 498; *Crews*, 38 Ill. 2d at 337.) We need not decide now if any specific traditional standard of proof applies at sentencing. Important to our analysis here is that the burden of proof at sentencing is lower than proof beyond a reasonable doubt and that evidence received be relevant and reliable. We do note, however, that the Supreme Court has held that a preponderance of the evidence standard is constitutional when a sentencing court must find a particular fact in order to trigger a minimum sentence. *McMillan v. Pennsylvania* (1986), 477 U.S. 79, 91-92, 91 L. Ed. 2d 67, 80, 106 S. Ct. 2411, 2419.

While not dispositive of the issue presented in this case, we note that a majority of courts that have considered the question have held that evidence of criminal conduct can be considered at sentencing even if the defendant previously had been acquitted of that conduct. (See, *e.g.*, *United States v. Coleman* (10th Cir. 1991), 947 F.2d 1424; *United States v. Dawn* (8th Cir.

1990), 897 F.2d 1444; *United States v. Mocciola* (1st Cir. 1989), 891 F.2d 13; contra *United States v. Brady* (9th Cir. 1991), 928 F.2d 844; see generally 3 W. La-Fave & J. Israel, Criminal Procedure §25.1(g), at 119 (1984); Annot., 96 A.L.R.2d 768, 791 (1964 & Later Case Service).) The majority's reasoning is that an acquittal is not necessarily conclusive evidence that the defendant did not commit the acts alleged. It merely means that the government was unable to prove beyond a reasonable doubt that the defendant committed them. Therefore, there is no reason to exclude consideration of the underlying facts at sentencing where the burden of proof is lower. See *United States v. Sweig* (2d Cir. 1972), 454 F.2d 181, 184.

Furthermore, the Supreme Court has decided that evidence that resulted in a prior acquittal can be used for limited purposes in the guilt phase of trial for another offense. (*Dowling v. United States* (1990), 493 U.S. 342, 107 L. Ed. 2d 708, 110 S. Ct. 668 (evidence of armed robbery of which defendant was acquitted admissible for purposes of identification in subsequent bank robbery prosecution).) The Court reasoned in *Dowling* that the State is not precluded from "relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." *Dowling*, 493 U.S. at 349, 107 L. Ed. 2d at 718, 110 S. Ct. at 672.

Jackson asserts that there is a difference between considering evidence of criminal conduct after there has been an acquittal and considering evidence prior to an acquittal, as occurred in his case. In the former situation, he argues, the judge may look at the evidence differently since he knows that it has already resulted in an acquittal. While we recognize the difference Jackson alleges, we do not believe that the difference amounts to a denial of due process in Jackson's case.

Judge Bowman may not have been aware that Jackson would ultimately be acquitted of the Betty K. charges, but he did know that Betty K.'s testimony had not yet resulted in a conviction. Moreover, there is no glaring inconsistency reflected in the record of this case. Jackson's acquittal on the Betty K. charges is still not equivalent to conclusive evidence that he did not commit the alleged conduct. The record here shows merely that in the subsequent trial, the State was not able to prove every element of its case against Jackson in a manner sufficient to meet the higher burden of proof applicable in criminal trials.

Jackson also claims that he is entitled to a new sentencing hearing under *United States v. Tucker* (1972), 404 U.S. 443, 30 L. Ed. 2d 592, 92 S. Ct. 589. In *Tucker*, the defendant had been convicted of armed robbery and was sentenced to the maximum term after the court considered the defendant's three earlier felony convictions. Two of these convictions were later set aside as unconstitutional because the defendant had not been allowed the benefit of counsel. (*Tucker*, 404 U.S. at 444-45, 30 L. Ed. 2d at 594-95, 92 S. Ct. at 590.) The Court concluded that the defendant was entitled to a new sentencing hearing because he had been sentenced " 'on the basis of assumptions concerning his criminal record which were materially untrue.' " *Tucker*, 404 U.S. at 447, 30 L. Ed. 2d at 596, 92 S. Ct. at 592, quoting *Townsend v. Burke* (1948), 334 U.S. 736, 741, 92 L. Ed. 1690, 1693, 68 S. Ct. 1252, 1255.

*Tucker*, however, is distinguishable from this case. When Tucker was sentenced, the trial judge considered the fact that the defendant had three previous convictions. Two of those convictions were later overturned. In contrast, when Jackson was sentenced, Judge Bowman did not consider any previous convictions; he considered instead the testimony of the alleged victim of

Jackson's previous criminal behavior. The witness was subject to cross-examination by Jackson's attorney and Jackson presented rebuttal testimony. The question then is whether the evidence Judge Bowman heard at the sentencing hearing must now be considered inaccurate in light of Jackson's subsequent acquittal. Similar to the cases where there was an acquittal before the charges were considered in sentencing, we again see no reason why Judge Bowman could not find that Jackson had committed the acts alleged to a certainty sufficient for sentencing, while Judge Black could find in the subsequent proceeding that the State had not proven its case beyond a reasonable doubt. Thus we cannot say that the evidence considered in sentencing was "materially untrue," as it was in *Tucker*.

Jackson next argues that he was denied due process because the trial judge sentenced him based on the assumption that he was guilty of the Betty K. charges. Citing *In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068, Jackson argues that this assumption deprived him of due process because the trial judge's belief that he raped Betty K. is equivalent to Jackson's being convicted and sentenced on the Betty K. charges without having been found guilty beyond a reasonable doubt.

We do not believe that sentencing based in part on the Betty K. charges is equivalent to punishment before conviction. Evidence of Jackson's rape of Betty K. was merely one element of the proof of character and aggravation of sentence for his crime against Mary W. Just as consideration of prior convictions is not resentencing a defendant for a past crime, consideration of a pending charge should not be considered premature punishment. Evidence that a defendant has repeated a crime justifies a heavier penalty for the crime on which the defendant is being sentenced, even if the

defendant has not actually been convicted twice. Moreover, precluding the use of relevant and reliable evidence because no conviction was obtained would deny the sentencing authority the use of some of the most relevant evidence of a defendant's character, propensities, and likelihood of rehabilitation, evidence that is critical to the trial court's role in deciding on the most appropriate sentence for each individual offender. We understand that Jackson would be satisfied by a new sentencing hearing in which the fact of his acquittal on the Betty K. charges would be considered by the sentencing judge together with Betty K.'s testimony. Because we find no violation of due process in the original sentencing hearing, however, we do not believe a new hearing is warranted.

In sum, we hold that the consideration of the Betty K. charges in Jackson's sentencing on the Mary W. charges did not violate due process. Given our decision on that issue, the appellate court decisions in *People v. Dean* (1st Dist. 1987), 156 Ill. App. 3d 344, and *People v. McGee* (1st Dist. 1991), 211 Ill. App. 3d 641, are hereby overruled.

We next address Jackson's argument that he was denied effective assistance of counsel because his lawyer failed to present mitigation witnesses at his sentencing hearing. To establish ineffective assistance of counsel, a defendant must show that counsel's performance "fell below an objective standard of reasonableness" (*Strickland v. Washington* (1984), 466 U.S. 668, 688, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064) and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*Strickland,* 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068).

We need not decide whether counsel's failure to present mitigation witnesses was unreasonable because

defendant has failed to show that the witnesses would have made a difference in the sentence he received. Jackson argues that counsel should have presented his parents, his high school principal, and another acquaintance as mitigation witnesses at sentencing. Affidavits in the record show that these witnesses would have testified that Jackson had been raised in a normal family environment, had no reputation for violence, had a good reputation for honesty, and had been active in sports when he was younger.

At the time of the sentencing hearing, however, Jackson's former principal, Virgil Yates, and an acquaintance, David Phelps, had had no contact with Jackson for more than 10 years. Additionally, the testimony of Jackson's parents would most likely be viewed as biased. Finally, much of the information presented in the affidavits was contained in the presentence report and was therefore already before the judge. When Jackson was sentenced, he had just been convicted of a brutal rape. In the sentencing hearing, Judge Bowman was presented with evidence of a second rape, including threats of violence or death, and another violent incident perpetrated by Jackson against his landlord. Presented with a record such as this, we cannot say that there is a reasonable probability that Jackson's sentence would have been different had these mitigation witnesses testified.

Jackson cites *Tyler v. Kemp* (11th Cir. 1985), 755 F.2d 741, and *Dillon v. Duckworth* (7th Cir. 1984), 751 F.2d 895, as authority for the proposition that failure to call mitigating witnesses for a defendant with no criminal record constitutes ineffective assistance of counsel. We do not believe these cases apply in Jackson's situation. In *Tyler*, the defendant was convicted of the murder of her husband and sentenced to death. The defendant's trial counsel had been admitted to the

bar for only a few months and failed to present any evidence in mitigation. There was evidence that the defendant's husband beat her when he was drunk, that the defendant had a good reputation as a wife and mother, and that she had a good work record and no criminal record, not even an arrest. (*Tyler*, 755 F.2d at 745.) In *Dillon*, an 18-year-old defendant with no criminal record was convicted of felony murder and sentenced to death after his trial counsel's request for a continuance because of his own incompetency was arbitrarily denied by the trial judge. (*Dillon*, 751 F.2d at 898.) We do not believe Jackson's case presents the same compelling circumstances as *Tyler* or *Dillon*.

## Conclusion

For the reasons expressed here, we conclude that the defendant, Jackson, is not entitled to a new sentencing hearing. The circumstances of his acquittal on the Betty K. charges do not indicate that the trial judge considered any improper or inaccurate facts at the sentencing hearing. Additionally, the record shows that the trial judge did not misunderstand the significance of Betty K.'s testimony or assume that Jackson had been convicted of that crime. Finally, we conclude that Jackson was not denied the effective assistance of counsel at sentencing. We therefore affirm the judgments of the circuit and appellate courts.

*Affirmed.*

JUSTICE CLARK, specially concurring:

I agree with the majority opinion and write separately only to point out that I believe defendant's due process rights were adequately protected by the hearing he received on his petition for post-conviction relief. Additionally, I note that today's decision should not be interpreted to prevent trial courts from grant-

ing post-conviction relief if the facts of a particular case warrant such a remedy.

Defendant's post-conviction petition sought a new sentencing hearing because the sentencing judge considered evidence of an alleged sexual attack on Betty K. for which defendant was later acquitted. It is significant to note that defendant does not argue that evidence of the attack on Betty K. was improperly admitted at his sentencing hearing. Nor does defendant contend that such evidence would be inadmissible at the new sentencing hearing which he requested. Rather, defendant asserts he is entitled to a new sentencing hearing because this evidence must be reconsidered in light of the subsequent acquittal.

Due process requires that a sentence must not be imposed based upon materially false assumptions regarding the defendant's background. While the rules of evidence for a sentencing hearing are relaxed, a court's diligence in preserving the integrity of the system must not be. Thus, when evidence is presented of alleged criminal conduct for which the defendant has not been convicted, the sentencing court must be careful not to assume that defendant was or will be convicted. If the defendant has already been acquitted for an alleged offense, that fact should be taken into account. Where, as here, there has not yet been a trial on the alleged offense the sentencing court should view the evidence in light of the presumption of innocence. In either situation, the court is free to accord substantial weight to the evidence of the alleged criminal conduct, so long as it does not assume defendant was or will be convicted for that offense.

If a sentence is imposed based upon material facts which are subsequently proved to be untrue, due process dictates that the defendant be given the opportunity to prove that his sentence would have been differ-

ent had the court been aware of the true state of affairs. In the present case, defendant was given the opportunity to make such a showing via the hearing on his post-conviction petition. At this hearing, the sentencing judge was made aware of the subsequent acquittal and considered its effect on the sentence imposed. Although the judge indicated that evidence of the attack on Betty K. was a significant factor in the sentence, he also indicated that the subsequent acquittal would not have altered his decision. Because defendant was given this opportunity to present the evidence of his acquittal to the sentencing judge, I believe defendant's due process rights were adequately protected.

Finally, I note that today's decision does not prevent a trial court from granting a new sentencing hearing under similar circumstances. If the court finds that evidence of a subsequent acquittal would have affected the sentencing decision, then I believe a new sentencing hearing would be appropriate. For example, if the sentencing judge in this case would have accorded substantially less weight to the evidence of the alleged attack on Betty K. had he known of defendant's acquittal, then I believe defendant would have been entitled to a new sentencing hearing. Further, today's decision does not prevent a new sentencing hearing when a sentencing court incorrectly assumes a defendant has been convicted of another crime, or relies on a conviction which is later reversed on constitutional grounds (*United States v. Tucker* (1972), 404 U.S. 443, 30 L. Ed. 2d 592, 92 S. Ct. 589).

JUSTICES BILANDIC and FREEMAN join in this special concurrence.