THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTONIO L. HARRIS, Defendant-Appellant.

Fourth District    No. 4—03—0755

Opinion filed September 6, 2005.—Rehearing denied October 17, 2005.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Jack Ahola, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Jason P. Young, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In May 2002, defendant, Antonio L. Harris, pleaded guilty to armed robbery (720 ILCS 5/18—2(a)(2) (West 2000)). In exchange for his plea, the State agreed to dismiss other charges but made no agreement with defendant regarding what sentence the State would recommend. In August 2002, the court sentenced him to 22 years in prison. The court also ordered that the sentence be served consecutively to defendant's 18-month sentence in an unrelated case.

Defendant appeals, arguing that (1) the trial court abused its discretion in sentencing him by attributing undue weight to defendant's participation in other crimes and (2) this court must amend his sentencing order because the trial court failed to admonish him during guilty-plea proceedings that he was eligible for consecutive sentences. We disagree and affirm.

## I. BACKGROUND

In January 2002, the State charged defendant with four counts of armed robbery (720 ILCS 5/18—2(a) (West 2000)) and one count of aggravated battery with a firearm (720 ILCS 5/12—4.2(a) (West 2000)). At the May 2002 guilty-plea hearing, defendant agreed to plead guilty to one count of armed robbery. In exchange, the State agreed to dismiss the remaining armed-robbery charges, the aggravated-battery charge, and charges in an unrelated case (Macon County case No. 02—CF—350). The trial court admonished defendant that (1) no agreement existed regarding what sentence the court would impose and (2) he was eligible to be sentenced to between 6 and 30 years in prison. The court did not admonish defendant that he was eligible for consecutive sentences.

According to the factual basis the State provided for defendant's guilty plea, around 9:40 p.m. on December 21, 2001, defendant, who was wearing a black, hooded sweatshirt and a blue ski mask, walked into a Wareco gas station in Decatur. He placed a white, plastic grocery bag on the counter, pointed a handgun at a female employee, and told her to "give [him] all the money." The employee put an undetermined amount of cash in the plastic bag, and defendant ran from the gas station. The next day, police officers arrested defendant and searched a residence where he occasionally stayed. Inside, officers found a white, plastic grocery bag containing cash, a .22-caliber handgun, a blue ski mask, and a black, hooded sweatshirt. During a police interview, defendant admitted robbing the Wareco gas station.

The trial court (1) accepted the State's factual basis, (2) found that defendant had knowingly and voluntarily entered his guilty plea, and (3) accepted the plea.

At the July and August 2002 sentencing hearing, a Decatur police detective and a police officer testified that defendant was involved in two other armed robberies that occurred around the same time as the December 21, 2001, armed robbery. (Defendant had not been tried for, or convicted of, these crimes.) In particular, they testified as to (1) items found during the December 22, 2001, search that matched the description of items used during the other two armed robberies and (2) a statement given by a codefendant as to defendant's participation in the other crimes.

Two employees of B&C Television in Decatur testified and described an armed robbery that occurred there on December 11, 2001. They also identified items used in that robbery, which matched items seized during the December 22, 2001, search. An employee of the Wareco gas station testified and described an armed robbery that occurred there on December 14, 2001. She also identified items used in that robbery that matched items seized during the December 22, 2001, search.

Defendant's maternal and paternal grandmothers testified as to defendant's good character and caring nature. They also testified that defendant's family members were willing to help support him financially and emotionally.

Defendant testified that he accepted responsibility for committing the December 21, 2001, armed robbery. His goal was to rehabilitate himself and find a job after being released from prison.

The trial court considered the presentence investigation report, which indicated, in pertinent part, as follows: (1) defendant, who was 19 years old at the time of the offense, had one prior felony conviction and one prior misdemeanor conviction; (2) defendant was the father of a young child, although he did not financially support his child; (3) defendant had earned his high school equivalency degree (G.E.D.); and (4) defendant had a full-time job at the time of his arrest.

The State recommended that the trial court impose a 25-year prison sentence, and defense counsel recommended that the court impose a prison sentence between 8 and 10 years. After considering the evidence and counsel's arguments, the court sentenced defendant to 22 years in prison. The court also ordered that the sentence be served consecutively to defendant's 18-month sentence for obstructing justice (Macon County case No. 00—CF—1829), upon determining that defendant committed the December 21, 2001, armed robbery while out on bond in case No. 00—CF—1829.

This appeal followed.

## II. ANALYSIS

### A. The Trial Court's Consideration at Sentencing of Defendant's Participation in Other Armed Robberies

Initially, we note that defendant does not challenge the admissibility at his sentencing of evidence that he participated in other armed robberies. Indeed, such a claim would wholly lack merit. See *People v. Jackson*, 149 Ill. 2d 540, 548, 599 N.E.2d 926, 930 (1992) (evidence of past criminal conduct for which there has been no prosecution or conviction is relevant to a defendant's character and may be considered at sentencing); *People v. Ward*, 154 Ill. 2d 272, 333, 609 N.E.2d 252,

278 (1992) ("A requirement for the admissibility of evidence at the aggravation/mitigation phase of the sentencing hearing is relevancy and reliability"). Instead, defendant argues that the trial court abused its discretion in sentencing him when it "overly considered" the other-crimes evidence, which resulted in a "complete discounting" of mitigating evidence. We disagree.

In *People v. Kennedy*, 336 Ill. App. 3d 425, 433, 782 N.E.2d 864, 871 (2002), the appellate court discussed the factors to be considered during sentencing, as follows: "A trial court's sentencing determination must be based on the particular circumstances of each case, including factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." As stated above, one of the factors that a trial court may properly consider is the defendant's participation in other crimes. *Jackson*, 149 Ill. 2d at 548, 599 N.E.2d at 930. The trial court is the proper forum for determining a defendant's sentence, and we will not alter a trial court's sentencing decision absent an abuse of discretion. *People v. Hensley*, 354 Ill. App. 3d 224, 234, 819 N.E.2d 1274, 1284 (2004).

Armed robbery is a Class X felony (720 ILCS 5/18—2(b) (West 2000)) and has a sentencing range of 6 to 30 years in prison (730 ILCS 5/5—8—1(a)(3) (West 2000)).

In sentencing defendant to 22 years in prison, the trial court stated, in pertinent part, as follows:

"In this case, we have a relatively young man, apparently, comes from a good[,] supportive family, and he is good to them, helps his grandmothers out and other members of the family, and I feel certain, from having listened to his grandmothers here this morning, that if they had known any of this stuff was going on, they sure wouldn't have put up with it because they're not that kind of people ***. So, certainly,—uh—[defendant] was not brought up by his family to do things like this. It's [a] little curious when somebody does have an upbringing like that and then they turn to crime in order to buy presents to pay their family back for their kindness. I guess in some respects, maybe, that's laudable, but it's certainly misplaced sentiment to do something like that.

There are some other factors that we can look at that—uh—weigh in [defendant's] favor. Although he dropped out of school, apparently, he did get a G.E.D. That shows that he has the capability of doing things that are positive. He has been employed in the past at fast food restaurants, and [through] personal experience, the [c]ourt's aware that that's not generally fun work and doesn't [pay] very well, but it is honorable to do work like that if that's what's available.

On the other hand, we have a young man here who is not a

stranger to the [l]egal [s]ystem, had involvement as a juvenile, had involvement as an adult with a misdemeanor [c]riminal [d]amage to [p]roperty in [1999], and the felony [o]bstructing [j]ustice—uh—for which he was sentenced in his absence in November [2001]. ✱✱✱

In addition, apparently, [defendant] didn't learn anything from—uh—being convicted for that offense in that he went ahead and gave the police a false name when he was picked up for this offense.

Further, although there are, as [defense counsel] pointed out, some discrepancies in some of the descriptions and things of that nature that were given relating to the B&C robbery, some of the hearsay that the [c]ourt has heard with respect to aggravation in this case is, of course, admissible if the [c]ourt finds it to be—uh—reliable. And the [c]ourt does find it to be reliable. I find at the least that [defendant] was involved in the armed robbery at B&C, and I think it's probably likely that he ·was involved in the prior armed robbery at Wareco as well.

Considering all of those things and all of the other factors in aggravation and mitigation, it appears to the [c]ourt that a sentence in excess of what has been suggested by [defense counsel] is appropriate in this case. On the other hand, with some of the things that [defendant] has going in his favor, I don't think a sentence of a length of that has been suggested by the State is appropriate either, although I think the State's recommendation is closer to what is reasonable and appropriate in this case than [defense counsel's]."

■ The record belies defendant's contention that the trial court "overly considered" his participation in the other armed robberies and "completely discount[ed]" the mitigating evidence. Instead, the record clearly shows that the court was aware of the circumstances of the crime and carefully considered both the aggravating and mitigating factors in fashioning an appropriate sentence. Judged in accordance with the appropriate standard of review, we conclude that the trial court's sentencing decision did not constitute an abuse of discretion.

In so concluding, we emphatically reject defendant's contention that he was prejudiced because the trial court allowed too much detailed evidence of the other armed robberies, thus creating "too many trials within a trial at sentencing." The only cases defendant cites in support of his contention involved other-crimes evidence admitted during the *guilt phase of a trial*, not during sentencing. See, for example, *People v. Bennett*, 281 Ill. App. 3d 814, 828, 666 N.E.2d 899, 908 (1996) (during guilt phase, the State should not " 'put on a trial within a trial' " by introducing too many details of other crimes). "A trial court is not bound by the same rules of evidence at a sentenc-

ing hearing as it is during the guilt phase of a trial" (*People v. West*, 355 Ill. App. 3d 28, 42, 823 N.E.2d 82, 93 (2005)), and, as earlier stated, the trial court may admit other-crimes evidence at sentencing if it is (1) relevant and (2) reliable (*Ward*, 154 Ill. 2d at 333, 609 N.E.2d at 278). In addition, this court has long held that the amount of other-crimes evidence the trial court may consider in sentencing a defendant is largely unlimited. *People v. Schleyhahn*, 4 Ill. App. 3d 591, 596, 281 N.E.2d 409, 413 (1972). Thus, contrary to defendant's suggestion, the sentencing court need not—as it does during the guilt phase—concern itself with whether the amount of detail allowed in describing other crimes results in prejudice to the defendant.

## B. The Trial Court's Failure To Admonish Defendant That He Was Eligible for Consecutive Sentences

■ Defendant also argues that the trial court failed to admonish him during guilty-plea proceedings that he was eligible for consecutive sentences. He thus contends that this court must amend his sentencing order to reflect that his 22-year prison sentence is to be served concurrently with his 18-month sentence in Macon County case No. 00—CF—1829. Although we agree that the court failed to admonish defendant that he was eligible for consecutive sentences, we disagree as to defendant's requested remedy.

Supreme Court Rule 402(a)(2) requires that before accepting a guilty plea, the trial court must inform the defendant of "the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences." 177 Ill. 2d R. 402(a)(2). If the court's failure to properly admonish a defendant results in the denial of "real justice" or prejudice to the defendant, the reviewing court should vacate the defendant's guilty plea and allow the defendant to plead anew. See *People v. Blankley*, 319 Ill. App. 3d 996, 1007, 747 N.E.2d 16, 25 (2001); see also *People v. Hayes*, 336 Ill. App. 3d 145, 152-53, 782 N.E.2d 787, 793 (2002) (holding that the defendant's guilty plea must be vacated and the cause remanded to allow him to plead anew where the trial court failed to inform the defendant during his guilty-plea proceedings that his sentences would be consecutive); *People v. Brown*, 217 Ill. App. 3d 66, 70, 576 N.E.2d 887, 890 (1991) (when a trial court fails to admonish a defendant in accordance with Supreme Court Rule 402, the defendant's guilty plea must be vacated).

In this case, the two Macon County assistant State's Attorneys who appeared at defendant's May 2002 guilty-plea hearing should have (1) been aware of Macon County case No. 00—CF—1829 and (2) informed the trial court as to the impact of that case on defendant's

sentence for armed robbery. However, they did not so inform the court, and it is undisputed that the court failed to admonish defendant that he was eligible for consecutive sentences, as is required by Supreme Court Rule 402(a)(2) (177 Ill. 2d R. 402(a)(2)).

Nonetheless, we need not determine whether the trial court's failure to properly admonish defendant requires us to vacate defendant's guilty plea and allow him to plead anew because defendant does not seek that remedy. Instead, he asks this court for the wrong remedy—namely, that this court amend his sentencing order to reflect that his 22-year prison sentence is to be served concurrently with his 18-month sentence in Macon County case No. 00—CF—1829. In support of his remedy request, defendant cites *People v. Wills*, 251 Ill. App. 3d 640, 622 N.E.2d 1271 (1993). However, that case is inapposite.

In *Wills*, the defendant pleaded guilty to four counts of theft of property valued over $300. In exchange, the defendant agreed, in part, to cooperate with the authorities and make statements regarding his and his coconspirator's actions in their theft schemes. *Wills*, 251 Ill. App. 3d at 641, 622 N.E.2d at 1272. During the defendant's guilty-plea hearing, the trial court failed to admonish him that he was eligible for consecutive sentences. *Wills*, 251 Ill. App. 3d at 642, 622 N.E.2d at 1273. The defendant later fulfilled his part of the agreement and cooperated with authorities. *Wills*, 251 Ill. App. 3d at 641, 622 N.E.2d at 1272. On appeal, the Fifth District (1) concluded that the trial court failed to properly admonish the defendant that he was eligible for consecutive sentences and (2) remanded for the trial court to enter an amended sentencing order reflecting that the defendant's sentences were to run concurrently. In so doing, the Fifth District reasoned that the defendant "relied to his detriment on the trial court's admonishments and made statements against his interest implicating himself in the schemes." *Wills*, 251 Ill. App. 3d at 645, 622 N.E.2d at 1275. Unlike in *Wills*, no unusual circumstances exist here that require this court to amend defendant's sentencing order. Accordingly, because defendant has not asked this court to vacate his guilty plea and allow him to plead anew, we need not further address the trial court's failure to properly admonish defendant.

We view appellate counsel's request that this court amend defendant's sentencing order—as opposed to vacating his guilty plea—as a tactical decision, not an oversight or mistake. That is, we suspect counsel understands that defendant would likely not benefit from having his guilty plea vacated and the parties returned to the positions they were in before defendant pleaded guilty, given that (1) the State could force defendant to stand trial on all the charges that were either dismissed or about which evidence was presented at the

sentencing hearing and (2) if defendant were convicted, consecutive sentences would again result because they would be statutorily mandated. If defendant thinks otherwise about his appellate counsel's handling of this case, he may file a petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122—1 through 122—8 (West 2004)).

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

COOK, P.J., and KNECHT, J., concur.