NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241047-U

NO. 4-24-1047

IN THE APPELLATE COURT

FILED
June 26, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Logan County |
| BRIAN K. WILLIAMS, | ) | No. 17CF126 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Donald W. Knapp Jr., |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Knecht and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, finding the trial court did not consider any improper sentencing factors or inadmissible evidence at sentencing.

¶ 2    Defendant, Brian K. Williams, appeals from his sentences to consecutive terms of 13 years in prison for two counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(3) (West 2016)) following his partially negotiated plea of guilty. Defendant argues, during the sentencing hearing, the trial court improperly allowed the State to present evidence of uncharged criminal acts between defendant and the alleged victim in this case that was not substantiated by live witness testimony subject to cross-examination. The State responds the court did not consider any improper evidence or sentencing factors and no errors occurred. We affirm.

¶ 3                          I. BACKGROUND

¶ 4    The underlying facts of this case were discussed in detail in *People v. Williams*,

2023 IL App (4th) 220677-U, ¶¶ 6-21. Accordingly, we discuss only those facts relevant to resolve the issue presented in this appeal.

¶ 5                                    A. Prior Proceedings

¶ 6             In August 2017, the State charged defendant by information with two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(b)(1) (West 2016)) (counts I and II) and one count of aggravated criminal sexual assault (count III) (*id.* § 11.20(a)(3)). In November 2018, defendant entered into a partially negotiated plea agreement with the State. In exchange for defendant's plea of guilty to counts I and II, the State agreed to dismiss count III and cap its sentencing recommendation at 33 years in prison. The trial court ultimately sentenced defendant to a total of 120 years in prison. The court later denied defendant's posttrial motion, and on appeal, this court allowed the parties' agreed motion for summary remand for compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). See *People v. Williams*, No. 4-19-0511 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 7             On remand, defendant filed a motion to withdraw his guilty plea, which the trial court denied. Defendant appealed, and this court concluded the trial court failed to substantially comply with Illinois Supreme Court Rule 402 (eff. Jul. 1, 2012). *People v. Williams*, 2023 IL App (4th) 220677-U, ¶¶ 33-36. Accordingly, the court's judgment was reversed and remanded with directions to allow defendant to withdraw his guilty plea and plead anew. *Id.* ¶ 50.

¶ 8                                    B. Guilty Plea

¶ 9             On the most recent remand, the trial court vacated defendant's plea and assigned new counsel to represent him. In April 2024, the State filed an amended information, charging defendant with the same two counts of predatory criminal sexual assault of a child and two new counts of criminal sexual assault, Class 1 felonies (720 ILCS 5/11-1.20(a)(3) (West 2016)). The

criminal sexual assault charges alleged that on or about July 9, 2017 (count III), and August 2, 2017 (count IV), defendant's sex organ made contact with the sex organ of D.E., a family member who was under the age of 18.

¶ 10        On the same date, defendant pleaded guilty to counts III and IV. In exchange for his plea of guilty, the State agreed to dismiss the remaining predatory criminal sexual assault of a child charges (counts I and II). There was no agreement regarding the sentence. The State provided the following factual basis in support of the plea:

> "If this matter were to proceed to a trial the State would provide evidence and testimony and prove beyond a reasonable doubt that the Defendant committed the offense of criminal sexual assault.
>
> [D.E.] would testify that the Defendant who would be identified in open court is her great uncle. D.E. would further testify that *** [in June 2017] she turned 13 years old.
>
> On or about [July 9, 2017,] she was with the Defendant in his bedroom, and the Defendant had sexual intercourse with her in that he placed his penis in her vagina.
>
> She would also testify that on [August 2, 2017,] she was with the Defendant in his bedroom, and the Defendant had sexual intercourse with D.E. in that the Defendant placed his penis in her vagina.
>
> Dr. Elham Altaf *** would testify that she is a medical doctor, and in August of 2017 she was employed at Planned Parenthood in Springfield, Illinois.
>
> On [August 31, 2017,] D.E. came to Planned Parenthood as a patient, and Dr. Altaf performed an ultrasound on D.E. and confirmed that D.E. was pregnant

and the gestational age was estimated to be seven weeks and four days. Then Dr. Altaf performed a procedure terminating the pregnancy.

The product of the conception was transferred to Mark Landers of the Logan County Sheriff's Office who transported the evidence to the Illinois State Police crime laboratory for testing.

Christopher Webb would testify that he is employed with the Illinois State Police crime laboratory as a forensic scientist. That he would further testify to receiving DNA profiles from the Defendant, D.E., and the product of conception and performed a parentage analysis resulting in the probability of parentage as 99.999 percent as compared to untested, unrelated males."

¶ 11 Defense counsel agreed to the factual basis, and the trial court accepted defendant's plea as knowing and voluntary. The court ordered the previous presentence investigation report (PSI) be released to defendant's new counsel.

¶ 12 C. Defendant's Motion *in Limine*

¶ 13 Prior to sentencing, defense counsel filed a motion *in limine* to bar the trial court's consideration of certain statements contained in the PSI. Specifically, counsel argued "information in the PSI about how old the victim was when she was first abused and how long it had been going [on] should be deemed too unreliable for inclusion in the PSI and consideration by the Court under the law governing inclusion of uncharged criminal conduct in a PSI." At the previous sentencing hearing, the State argued defendant had been abusing D.E. for "years," beginning when she was seven or eight years old. These allegations stemmed from an interview with D.E. that was conducted at the Child Advocacy Center (CAC) during the investigation leading to the charges in this case, and which was referenced in the PSI as follows.

¶ 14　　　　The PSI contained a section called "Circumstances of the Offense," which indicated that on August 23, 2017, D.E. was interviewed by Denise Johnson at the CAC in Springfield, Illinois. Among other things, D.E. provided details about the sexual contact she had with defendant. Although D.E. did not know how many times this conduct occurred or how it started, she told Johnson that defendant began touching her when she was around seven or eight years old. After the CAC interview, a Logan County detective interviewed D.E., who was accompanied by her mother. According to the PSI, "The detective noted that [D.E.] stated she had sex with [defendant] between ten and twenty times in the past year."

¶ 15　　　　During the sentencing hearing, the trial court heard arguments on defendant's motion *in limine*. In support of the motion, defense counsel played a video of the August 23, 2017, interview of D.E. by Sheriff Landers and Detective Kindred, which was conducted at the Logan County Sheriff's office and admitted as Defendant's exhibit No. 4 without objection. Defense counsel informed the court he was not submitting the exhibit as evidence in mitigation. Instead, he was submitting it solely "to address [his] motion on the PSI." During the interview, the following exchange occurred:

　　　　"DETECTIVE KINDRED: If you had to guess, just the last year, from August until now, how many times do you believe that you had sex with him?

　　　　D.E: I don't know.

　　　　DETECTIVE KINDRED: You don't have to be accurate but if you can give us a rough idea of the—

　　　　D.E: I don't know.

　　　　DETECTIVE KINDRED: More than 10?

　　　　D.E: Uh yeah, maybe.

DETECTIVE KINDRED: Less than 20 or more than 20?

D.E: Less than 20.

DETECTIVE KINDRED: Okay so somewhere between 10 and 20 times over the course of a year?

D.E: [D.E. nods affirmatively].”

Additionally, later in the video, the following exchange occurred:

"DETECTIVE KINDRED: Again we're guessing, but we're not holding you to it alright, don't have to be, sometimes, somewhere between 10 and 20 times, less than 20, more than 10 you think, you guys had sexual intercourse, so that he had sex with you, his penis was in your vagina, right?

D.E.: Yeah.”

Defense counsel argued the portion of the PSI referencing D.E.'s responses in this interview should not be considered by the court in sentencing defendant because they were unreliable. Specifically, D.E. twice responded with "I don't know," and she once nodded her head instead of verbally responding, which was ambiguous. According to defense counsel, D.E. appeared to be "guessing" in response to Detective Kindred's questions. While defendant acknowledged uncharged conduct could be admissible in a PSI, the challenged statements in this case lacked any sufficient indicia of reliability. Accordingly, defendant's argument continued, the court should strike pages two through four of the PSI and should not consider D.E.'s statements that (1) the abuse began when she was seven or eight years old and (2) she and defendant had sex more than 10 but less than 20 times over the course of a year.

¶ 16          In response, the State argued the PSI was the result of an "independent investigation" conducted by neutral parties. Moreover, because the video of the interview was

- 6 -

admitted into evidence, the trial court could compare it to the PSI and assign it the appropriate weight. Furthermore, the State maintained that the references to defendant's other sexual conduct with D.E. constituted "a continuing course of conduct," not uncharged criminal offenses.

¶ 17 The trial court allowed defendant's motion in part and denied it in part. The court first concluded that it would not consider any references to sexual conduct between D.E. and defendant prior to August 2016, which would include the statement that the abuse began when D.E. was seven or eight years old. However, the court also found "there was sufficient reliability in the statements of 10 to 20 times from *** August of '16 to August of '17, the Court's not going to strike those statements."

¶ 18 D. Sentencing

¶ 19 At sentencing, defense counsel presented a number of exhibits, which included letters from Jim McGath (defendant's former employer) and James Williams (defendant's brother). Defense counsel also requested to present a sex offender evaluation report authored by Dr. Luis Rosell, which was not required by statute but which the trial court allowed, along with Dr. Rosell's *curriculum vitae*.

¶ 20 Dr. Rosell, a clinical psychologist licensed to conduct sex offender evaluations, testified defense counsel retained him to evaluate defendant. Dr. Rosell reviewed the evidence and discovery in this case. Specifically, this included the interviews of D.E. at the CAC and the Logan County Sheriff's Office and an interview of defendant by the sheriff's office. Dr. Rosell also interviewed defendant at the Logan County jail and administered a personality assessment inventory. Based on this inventory, he determined defendant did not have any significant clinical disorders. Dr. Rosell also found the sex offenses in this case were not characteristic of defendant, as demonstrated by his predominantly law-abiding life prior to the offenses. Additionally, Dr.

Rosell testified defendant agreed to participate in treatment if it were offered to him to "address the poor choices he made." Dr. Rosell also evaluated defendant using various risk assessments which, in his professional opinion, showed he presented a low end of average risk for reoffending compared to other sex offenders. Furthermore, when defendant turned 60 in a few years, his risk of reoffending would drop below average.

¶ 21 On cross-examination, Dr. Rosell acknowledged defendant did not inform him that he tried methamphetamine when he was 17 or 18 years old. Defendant denied having intercourse with D.E. but admitted to Dr. Rosell that he impregnated her, claiming it happened because there may have been skin-to-skin contact. Defendant told Dr. Rosell this happened "two or three times."

¶ 22 During rebuttal, Dr. Rosell explained it was not uncommon for sex offenders to deny or minimize their offenses, even after being convicted, and defendant had not yet received treatment to address denial and minimization.

¶ 23 As its only evidence in aggravation, the State asked the trial court to take judicial notice of the PSI.

¶ 24 In mitigation, defense counsel asked the trial court to take judicial notice of the 2019 sentencing hearing testimony of "Mark Parker, Roland Wright, and Brett Luedtke." (We note separately defense counsel likely meant Carolyn Wright, not Roland Wright, who testified at that hearing.) He also requested the court take judicial notice of letters attached to the 2019 PSI from Wendy Abbott and Mark Parker.

¶ 25 During sentencing arguments, the State recommended a sentence of 14 years in prison on each count, for a total of 28 years. The State emphasized defendant had sexual contact with D.E. more than the 2 or 3 times he admitted to Dr. Rosell, noting D.E. estimated it occurred between 10 and 20 times over the course of a year. The State maintained defendant's statements

to Dr. Rosell were not credible and showed a lack of rehabilitative potential. The State also noted one of the offenses in this case resulted in the 13-year-old victim's pregnancy, which was ultimately terminated. Finally, the State asserted a longer sentence in this case was necessary for deterrence.

¶ 26　　　Defense counsel did not ask for a specific prison sentence but instead requested time served. Defense counsel emphasized defendant had taken accountability for his actions by pleading guilty and preventing D.E. from having to testify in this case. Furthermore, defendant had agreed to pursue treatment if it was offered while he was in prison. Defendant was not diagnosed with any personality disorders and had minimal criminal history, consisting of four misdemeanors and a felony theft before the age of 25. Moreover, defendant's strong employment history and letter from his former employer supported defendant's ability to be restored to useful citizenship.

¶ 27　　　Defendant made a statement in allocution, in which he accepted responsibility for what happened to D.E. Additionally, defendant stated he wished to apologize to D.E. and her family and hoped they could forgive him.

¶ 28　　　In sentencing defendant, the trial court noted it had considered "the factual basis, the amended [PSI], the history, character, and attitude of the defendant, the evidence and arguments made at this hearing today, and the statement in allocution." The court also explained it was making its decision while keeping in mind its constitutional duty to balance the seriousness of the offense with the goal of restoring defendant to useful citizenship and had considered the relevant statutory factors in aggravation and mitigation.

¶ 29　　　In aggravation, the trial court found (1) defendant's conduct caused or threatened serious harm, (2) a sentence was necessary for deterrence, and (3) defendant was in a position of

trust over D.E. as her great uncle. In mitigation, the court found defendant (1) had very little criminal history, (2) was likely to comply with the terms of mandatory supervised release after being released, and (3) seemed genuinely remorseful and had taken responsibility for his actions. Additionally, the court noted it gave little weight to the report authored by Dr. Rosell because there were "significant differences" between what defendant told Dr. Rosell and D.E.'s version of events, indicating defendant had not been completely forthright.

¶ 30        Ultimately, the trial court sentenced defendant to 13 years in prison on each count, for a total of 26 years in prison.

¶ 31                                E. Postsentencing Motion

¶ 32        In July 2024, defense counsel filed a motion to reconsider defendant's sentence. In the motion, defendant argued, *inter alia*, the trial court erred when it considered uncharged criminal conduct, *i.e.*, D.E.'s statement defendant had sexually abused her between 10 and 20 times over the course of a year. Defense counsel argued this evidence was unreliable because it was not presented by way of personal testimony subject to cross-examination. Instead, it constituted unreliable double hearsay. The video interview of D.E., which was the basis of this evidence, was also unreliable because it involved leading questions by law enforcement to a 13-year-old girl, during which the detective told D.E. she could "guess" the number of times and she did not have to be "accurate." In the motion, defense counsel asked the court to vacate defendant's sentence and conduct a new sentencing hearing, where the court would not consider the uncharged criminal conduct.

¶ 33        At the hearing on the motion to reconsider, defense counsel argued D.E.'s statement in the video interview regarding the sexual abuse occurring between 10 and 20 times was unreliable because the detective invited her to "guess," provided the number of incidents of abuse,

and D.E. initially responded, "I don't know." Additionally, D.E. did not verbally respond when asked whether the number was somewhere between 10 and 20 times over the course of a year; she merely nodded her head. Defense counsel argued the trial court should sentence defendant solely based on the offenses to which he pleaded guilty.

¶ 34 In response, the State argued this issue was waived because defense counsel could not be allowed to submit the video interview into evidence and then argue the video interview was unreliable. According to the State, because the video interview was admitted into evidence, the trial court could consider the video interview as "aggravation or mitigation, however the Court wants to weigh it."

¶ 35 In rebuttal, defense counsel responded that he had to show the trial court the video interview to demonstrate the unreliability of D.E.'s statement and to contrast it with the statement in the PSI. Defense counsel reminded the court that he stated on the record he was only showing the video to support his motion "attacking what's in the PSI."

¶ 36 The trial court denied the motion to reconsider and explained its decision as follows:

"Turning to some of the next issues, that I erred in denying defendant's motion to strike reference to 10 to 20 times or 10 to 19 times. As I review Page 45 of the transcript, the Court did grant the defendant's motion to strike references to the sexual contact when the victim was seven or eight, but specifically found sufficient indicia of reliability regarding the 10 to 20 times of contact. That was based on the testimony from the victim's interview which the defendant played, not the State, and the defendant got some of what they wanted. They got me to strike the, I agree, the indicia of reliability regarding the sexual conduct starting at seven

to eight years old after viewing the victim's verbal and nonverbal responses did not seem reliable to me, but after viewing her verbal and nonverbal responses regarding the 10 to 20 times did seem reliable to me, so I denied that part of the motion to reconsider."

¶ 37     This appeal followed.

¶ 38                              II. ANALYSIS

¶ 39     On appeal, defendant asserts the trial court erred when it considered evidence in the PSI, based on a video interview with D.E., that he had sex with D.E. more than 10 but less than 20 times over the course of a year. Specifically, defendant claims the State failed to substantiate this uncharged criminal conduct with live witness testimony subject to cross-examination at the sentencing hearing. In response, the State argues the court considered appropriate sentencing factors and no error occurred. We affirm.

¶ 40                          A. Standard of Review

¶ 41     The trial court is allowed wide latitude in sentencing criminal defendants, and this court affords those decisions great deference. *People v. Solis*, 2019 IL App (4th) 170084, ¶ 23. Accordingly, this court generally will not disturb a trial court's sentencing decision within the statutory range absent an abuse of discretion. *Id.* An abuse of discretion occurs when the court's decision is arbitrary, fanciful, or unreasonable. *People v. Lawson*, 2018 IL App (4th) 170105, ¶ 28. Stated differently, "[a] sentence which falls within the statutory range is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense." *People v. Franks*, 292 Ill. App. 3d 776, 779 (1997). However, the issue of whether the court considered an improper factor in aggravation at sentencing is a question of law this court reviews *de novo*. *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 65. The defendant bears the burden to affirmatively establish that the

sentence was based on an improper factor. *People v. Williams*, 2018 IL App (4th) 150759, ¶ 18.

¶ 42                                    B. Applicable Law

¶ 43          Under the Illinois Constitution, "[a]ll penalties shall be determined both according

to the seriousness of the offense and with the objective of restoring the offender to useful

citizenship." Ill. Const. 1970, art. I, § 11. In fashioning a sentence for a criminal offense, the trial

court must base its decision "upon the particular circumstances of the case, including (1) the

defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense;

(3) the need to protect society; and (4) the need for punishment and deterrence." *Hibbler*, 2019 IL

App (4th) 160897, ¶ 64. Additionally, sections 5-5-3.1 and 5-5-3.2 of the Unified Code of

Corrections (730 ILCS 5/5-5-3.1, 5/5-5-3.2 (West 2022)) set forth mitigating and aggravating

factors that the trial court must consider when determining an appropriate sentence.

¶ 44          Both the defendant and the State may present evidence in mitigation and

aggravation, respectively, and it is well established that "[t]he ordinary rules of evidence that apply

during the guilt phase of a trial do not apply during a sentencing hearing." *People v. Bilski*, 333

Ill. App. 3d 808, 818 (2002). Instead, evidence will be admissible so long as it is "relevant and

reliable." *Id.* More specifically, "hearsay testimony is not *per se* inadmissible at a sentencing

hearing as unreliable or as denying a defendant's right to confront accusers," but "[t]he objection

goes to the weight of the evidence and not its admissibility." *People v. Williams*, 181 Ill. 2d 297,

331 (1998). Accordingly, "[h]earsay evidence of crimes that did not result in prosecution or

conviction is therefore admissible at the aggravation and mitigation phase if it meets the

requirements of relevancy and reliability." *Id.*

¶ 45          Defendant contends that any evidence of other crimes that did not result in a

conviction and was presented in aggravation at sentencing must be corroborated by live testimony

- 13 -

subject to cross-examination. In support of this argument, defendant cites cases such as *People v. English*, 353 Ill. App. 3d 337, 339 (2004) ("Evidence of other criminal conduct *should* be presented by witnesses, who can be confronted and cross-examined, rather than by hearsay allegations in the presentence report, so that the defendant has an opportunity to rebut the testimony." (Emphasis added.)); *People v. Jackson*, 149 Ill. 2d 540, 548 (1992) (same); *People v. Ramirez*, 98 Ill. 2d 439, 461 (1983) (holding the State permissibly introduced evidence of the defendant's other crimes at sentencing where witness testimony was subject to cross-examination and the information "bore directly upon the likelihood that the defendant would commit other offenses").

¶ 46        The cases defendant cites in support of his argument are distinguishable from the present case in several respects. In each of the cases defendant cites, the State introduced evidence of the defendant's unrelated other crimes to show his propensity to commit crimes, *i.e.*, a history and character of criminality. For instance, the defendant in *Jackson*, 149 Ill. 2d at 543-44, was convicted of the rape of Mary W. At sentencing, the State presented testimony from Betty K. and Ruth W. alleging the defendant raped and battered them, respectively; charges were pending regarding the Betty K. case, but the battery against Ruth W. remained uncharged. *Id.* at 544. In *English*, 353 Ill. App. 3d at 338, the defendant was convicted of an armed robbery that took place at Burger King. At sentencing, the State presented testimony that the defendant had pending charges for aggravated battery after he allegedly struck a police officer with a vehicle during a traffic stop. *Id.* In *Ramirez*, 98 Ill. 2d at 444, the defendant was convicted of murder and attempted armed robbery. At sentencing, the State introduced evidence "of at least seven other arrests for offenses of which the defendant had never been tried or convicted." *Id.* at 460.

¶ 47        In contrast to the cases cited by defendant, the hearsay evidence defendant challenges in this case was not presented by the State to show defendant's history and character of

criminality or even to establish that he committed any other crimes at all. Instead, the PSI's reference to D.E.'s statement that she had intercourse with defendant more than 10 but less than 20 times was under the heading, "Circumstances of the Offense." As noted above, the trial court has a duty at sentencing to consider the nature and seriousness of the offense. *Hibbler*, 2019 IL App (4th) 160897, ¶ 64. The hearsay statement challenged by defendant was directly relevant to the context of the events resulting in the charges against defendant in *this particular case*. Moreover, the record indicates the court did not consider the challenged statement as evidence of other crimes, but instead only compared it to defendant's statements in Dr. Rosell's report to assign it the appropriate credibility. We conclude the court did not err when it did not require the State to corroborate D.E.'s statements with live testimony subject to cross-examination because it was not offered as evidence of defendant's other crimes. Accordingly, defendant has not met his burden of establishing the court considered an improper sentencing factor.

¶ 48    Furthermore, we conclude the trial court did not err when it determined the challenged statement in the PSI was sufficiently reliable and therefore admissible. Specifically, the statement reads: "The detective noted that [D.E.] stated she had sex with [defendant] between ten and twenty times in the past year." As the parties acknowledge, the statement was derived from D.E.'s interview with Detective Kindred at the Logan County Sheriff's Office. Although the numbers of between 10 and 20 were suggested to D.E. by Detective Kindred, the video shows she assented to them twice, once verbally and once nonverbally. There is nothing in the video suggesting she lacked an opportunity to deny these numbers or to respond that she ultimately did not remember or did not know. At the time of the interview, D.E. was about 13 years old and was being asked about events that occurred within the last year. Although the statement in the PSI could have more accurately stated that D.E. "estimated" she had sex with defendant between 10

and 20 times in the past year, it was nonetheless an accurate summary of that portion of the interview. Additionally, Dr. Rosell testified he reviewed the interview when preparing his sex offender evaluation report, and therefore the court could properly consider the interview's content to the extent it was relevant to evaluating Dr. Rosell's credibility and the weight to be assigned to his report. See, *e.g.*, *Snelson v. Kamm*, 204 Ill. 2d 1, 27 (2003) ("[T]he weight to be assigned to an expert opinion is for the [factfinder] to determine in light of the expert's credentials *and the factual basis of his opinion*." (Emphasis added.)). Because the statement was based on a videotaped interview conducted by law enforcement under circumstances where D.E. was old enough to recall fairly recent events and was also used by defendant's own expert to prepare a report that was admitted at the sentencing hearing, we conclude it was sufficiently reliable for the court to consider and to assign the appropriate weight and credibility based on the context of the responses.

¶ 49        In sum, we conclude in our *de novo* review that the trial court did not consider any improper other-crimes evidence at sentencing requiring corroboration via live testimony subject to cross-examination. Moreover, the court did not err when it concluded the challenged hearsay statement in the PSI was sufficiently reliable to be admissible at sentencing. Accordingly, we need not consider the State's argument defendant invited any error he asserts on appeal. Because defendant alleges no other errors regarding his consecutive 13-year sentences, which fall within the statutory range for his two Class 1 felony convictions (see 730 ILCS 5/5-4.5-30(a) (West 2022)), we affirm.

¶ 50                                    III. CONCLUSION

¶ 51        For the reasons stated, we affirm the trial court's judgment.

¶ 52        Affirmed.